<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-6050**

JEAN GERMAIN,

                    Plaintiff - Appellant,

          v.

BOBBY P. SHEARIN,

                    Defendant - Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore.  J. Frederick Motz, Senior District Judge.  (1:13-cv-02267-JFM)

Argued: March 22, 2016                    Decided:  June 29, 2016

Before GREGORY and DUNCAN, Circuit Judges, and Richard L. VOORHEES, United States District Judge for the Western District of North Carolina, sitting by designation.

Affirmed as modified by unpublished opinion.  Judge Voorhees wrote the opinion, in which Judge Gregory and Judge Duncan joined.

**ARGUED**: Scott Martin, GIBSON, DUNN & CRUTCHER LLP, Washington, D.C., for Appellant.  Stephanie Judith Lane-Weber, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellee. **ON BRIEF**: Brian E. Frosh, Attorney General of Maryland, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

VOORHEES, District Judge:

This action involves statutory and constitutional claims asserted by Jean B. Germain, a Muslim inmate in the custody of the State of Maryland, Department of Public Safety and Correctional Services and housed at the North Branch Correctional Institute ("NBCI"). Germain asserts claims against Bobby P. Shearin, the warden at NBCI during all pertinent events. Specifically, Germain's allegations concern the quantity of food provided to him as a practicing Muslim during Ramadan in 2013.

Germain appeals the district court's order granting Shearin's motion for summary judgment and denying his request for discovery. For the reasons that follow, we affirm the district court's order on the alternative ground that Germain failed to exhaust his claims.

This court reviews de novo whether a district court erred in granting summary judgment. Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013). In doing so, we are required to view the facts and all reasonable inferences in the light most favorable to the non-movant. Id. Summary judgment can only be granted if "there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Id. This court can affirm the district court's grant of summary judgment on alternative grounds. McMahan v. Int'l Ass'n of Bridge,

3

Structural & Ornamental Iron Workers, 964 F.2d 1462, 1467 (4th Cir. 1992). In this case, Germain has failed to exhaust his administrative remedies. Given that this issue is dispositive of the entirety of this lawsuit, any additional analysis of the underlying proceedings would be dicta.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner . . . until such administrative remedies <u>as are available</u> are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). Proper exhaustion has been mandated by Congress; therefore, it is not a requirement subject to the discretion of the presiding judge. <u>Ross v. Blake</u>, No. 15-339, slip. op. at 5 (U.S. June 6, 2016); <u>Woodford v. Ngo</u>, 548 U.S. 81, 85 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." <u>Woodford</u>, 548 at 91.

The sole exception to the PLRA's exhaustion requirement is found in the plain meaning of the text itself: "A prisoner need not exhaust remedies if they are not 'available.'" <u>Ross</u>, slip. op. at 1. The Supreme Court recently provided three scenarios where administrative remedies "on the books" are considered "unavailable": (1) where the procedure "operates as a simple

4

dead end" because officials are "unable or consistently unwilling to provide any relief to aggrieved inmates[;]" (2) where the grievance process itself is so incomprehensible that "no ordinary prisoner can discern or navigate it[;]" and (3) where administrators prevent inmates from availing themselves of remedies by way of "machination, misrepresentation, or intimidation." Id., slip op. at 9-10.

The PLRA applies to Germain's claims. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 676 (4th Cir. 2005) (§ 1983 claims); Wall v. Wade, 741 F.3d 492, 495 (4th Cir. 2014) (RLUIPA). Shearin has also raised the exhaustion issue as an affirmative defense. See Jones v. Bock, 549 U.S. 199, 216 (2007).

To determine proper exhaustion, we look to the administrative requirements at NBCI. Id. at 218 ("[I]t is the prison's requirements, not the PLRA, that define the boundaries of proper exhaustion."). In Maryland, a prisoner must generally pass through three steps before filing in federal court. Minton v. Childers, 113 F. Supp. 3d 796, 801 (D. Md. 2015); Md. Code Ann., Corr. Servs. § 10-210(a) (inmate may not file in court until he or she has exhausted administrative remedies), § 10-206 (inmate must satisfy procedures contained in Division of Correction's regulations before final step). The methods for satisfying these steps can be found in the Inmate Handbook, the

5

Maryland Code of Regulations, and the Maryland Department of Correction Directives (the "DCDs").

The first step requires the inmate to file a request for administrative remedy with the warden. Minton, 113 F.3d at 801; Md. Code Regs. § 12.07.01.02.D. If the inmate's request is denied, he or she may appeal to the Commissioner of Correction (the "Commissioner"). Minton, 113 F.3d at 801. If this appeal is denied, the inmate must file a grievance with the Inmate Grievance Office ("IGO"). Id.

Shearin argues that Germain failed to exhaust his claims because there is no record of a grievance filed by Germain concerning these allegations. J.A. 20. In response, Germain conceded that he only proceeded through two of the three required steps. See J.A. 29. The record shows that Germain filed a request for administrative remedy on July 13, 2013. J.A. 24. The request stated that NBCI made it difficult for him to observe Ramadan because he was not receiving adequate nutrition. Id. The request was dismissed for procedural reasons pending submission of certain documents and responses to questions. Id. On July 30, 2013, Germain submitted his responses. J.A. 26. On July 31, 2013, this re-submission was also dismissed for procedural reasons. Id.

Germain argues that he should be excused from filing a grievance because he did not receive required documentation

6

from the Commissioner. Specifically, Germain declared that he filed an appeal of the dismissal on August 4, 2013, but was not provided "with the Part-C receipt . . . or a response." J.A. 29. Germain states that a grievance filed without these documents will not be considered by the IGO and will be dismissed as wholly lacking in merit. However, a review of the underlying record compared with NBCI's administrative requirements shows that Germain necessarily filed suit before he could have even attempted to finish the administrative process.[1]

DCD 185-002 concerns "Administrative Remedy Policy" at NBCI.[2] DCD 185-002 states that first-level appeals to the Commissioner must be mailed on a form located at Appendix 6 to the Directive. DCD 185-002.VI.M.1-2 & app. 6. The Commissioner is required to send Part C to the inmate five business days after receipt of the appeal. DCD 185-002.VI.M.5.

---

[1] Given that Germain's response demonstrates that exhaustion has not occurred, we need not examine whether or not the final step was "available" to Germain without Part C.

[2] DCD 185-002 is a public record available at the Maryland Department of Public Safety and Correctional Services website and, therefore, may be judicially noticed. Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (judicial notice); Md. Dep't Pub. Safety and Corr. Svcs., Div. Corr., Administrative Remedy Policy, (last accessed May 10, 2016) (saved as ECF opinion attachment), http://www.dpscs.maryland.gov/publicservs/procurement/ihs/index-DOC185.shtml.

7

Part C memorializes the date on which the Commissioner received the appeal. Id. Other limitation periods run from the Part C date. For example, an appeal is deemed denied if the Commissioner does not respond "within 30 calendar days of the date the Commissioner received the appeal." Id. at VI.M.14.

Germain states that he filed his appeal to the Commissioner on August 4, 2013. J.A. 29. Accordingly, the Commissioner was required to mail Germain Part C five days after the date of receipt. The most conservative estimate for this date is August 9, 2013. Germain signed his complaint on July 30, 2013, a day before his re-submitted request was denied. J.A. 9-10, 26. On August 5, 2013, his complaint was docketed by the Clerk's Office in the District of Maryland. J.A. 5. Accordingly, Germain necessarily failed to wait for the Commissioner to send him Part C.

Failing to wait for this five day period to expire shows that Germain did not so much as attempt to exhaust his administrative remedies before filing this lawsuit. Exhaustion has not occurred and dismissal is warranted when an institution's appeal process necessarily must continue after the filing of the complaint. McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002) (stating that First, Second, Third, Seventh, Eleventh, and D.C. Circuits follow this rule); see also Jackson v. D.C., 254 F.3d 262, 269 (D.C. Cir. 2001);

8

_Freeman v. Francis_, 196 F.3d 641, 645 (6th Cir. 1999); _French v. Warden_, 442 Fed. App'x 845, 846 (4th Cir. Aug. 12, 2011) (stating that "based on the dates of his initial grievance and the filing of the complaint in this action, [the inmate] could not have completed the grievance process before he filed suit in the district court.").

Moreover, Germain's failure to wait the full five days renders his professed excuse for failing to file a grievance untenable. This case does not implicate any of the scenarios envisaged by the Supreme Court in _Ross_. First, the record shows that Germain did not reach a dead end in the administrative process but rather circumvented it by filing prematurely. Second, the process at issue in the instant appeal is not so incomprehensible that no reasonable inmate could understand it: the five day period is a part of the orderly structure that allows NBCI's administrative process to function effectively. Finally, the third scenario is not implicated because Germain's failure to wait for Part C was not the result of any misconduct on the part of NBCI officials.

Accordingly, Shearin was correct in arguing that Germain failed to exhaust his claims because he did not complete the administrative process by filing a grievance. We, therefore, conclude that Germain failed to exhaust his claims prior to initiating this suit. Given that Germain failed to his exhaust

9

his claims, dismissal is mandatory.  However, dismissal is without prejudice to his right to refile should exhaustion become complete.  Accordingly, the ruling of the district court is

AFFIRMED AS MODIFIED.