**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-7340

ERIC WAYNE MOSS,

Plaintiff – Appellant,

v.

BUDDY HARWOOD, Sheriff, Madison County Sheriff's Office; FRANCES
DENTON, Sgt. over jail, Madison County Sheriff's Office; TOM BANKS, Captain,
Madison County Sheriff's Office,

Defendants – Appellees.

Appeal from the United States District Court for the Western District of North Carolina at
Asheville. Frank D. Whitney, District Judge. (1:18-cv-00122-FDW)

Argued: September 23, 2021                    Decided: December 2, 2021

Before MOTZ, DIAZ, and HARRIS, Circuit Judges.

Affirmed by published opinion. Judge Harris wrote the opinion, in which Judge Motz and
Judge Diaz joined.

**ARGUED:** Sarah Keller, Sierra Weingartner, WAKE FOREST UNIVERSITY SCHOOL
OF LAW, Winston-Salem, North Carolina, for Appellant. Michael A. Ingersoll,
WOMBLE BOND DICKINSON (US) LLP, Charlotte, North Carolina, for Appellees. **ON
BRIEF:** John J. Korzen, Director, Patrick J. Crowley, Third-Year Law Student, Elliott C.
Riches, Third-Year Law Student, WAKE FOREST UNIVERSITY SCHOOL OF LAW,

Winston-Salem, North Carolina, for Appellant. Sean F. Perrin, WOMBLE BOND DICKINSON (US) LLP, Charlotte, North Carolina, for Appellees.

_____

PAMELA HARRIS, Circuit Judge:

Eric Wayne Moss filed suit under § 1983, alleging violations of his civil rights while he was a pretrial detainee. At issue on appeal are two specific claims: first, that jail officials put Moss in disciplinary confinement without a hearing, in violation of his procedural due process rights; and second, that they delayed his access to urgent medical care, again violating his due process rights. The district court granted summary judgment to the officials on both counts, finding it beyond dispute that Moss failed to exhaust available administrative remedies for his procedural due process claim and that any delay in the provision of medical treatment did not rise to the level of deliberate indifference.

We agree with the district court. Moss does not contend that he exhausted his procedural due process claim, arguing instead that jail officials made administrative remedies unavailable by denying him access to the grievance system while he was in disciplinary confinement. But undisputed record evidence establishes that Moss was able to use the grievance system during that time, compelling the conclusion that administrative remedies were available to him. Likewise, we agree with the district court that Moss cannot show deliberate indifference, because there is no evidence that the defendants knew of but deliberately ignored a substantial risk to Moss's health. Accordingly, we affirm the judgment of the district court.

# I.

## A.

Both of Moss's claims stem from his pretrial detention at the Madison County Detention Center, a state jail in North Carolina, between March 4 and September 5, 2018. Although the facts related to the two claims overlap in some respects, for the sake of clarity we describe them separately below. Because Moss appeals from an order granting summary judgment, the facts are recounted in the light most favorable to Moss, the nonmoving party. *See Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019).

### 1.

We begin with Moss's claim that he was disciplined without a hearing, in violation of his procedural due process rights. That claim arose on April 1, 2018, when guards found a weapon in Moss's cell while searching for a food tray taken by his cellmate. Although Moss denied that the weapon was his, he was informed by Sergeant Frances Denton that he was being placed on disciplinary confinement, or "lockdown." Moss was initially sanctioned with 30 days of disciplinary confinement, but ultimately remained on lockdown until at least June 7, 2018.

According to Moss, he never received a disciplinary hearing in connection with his disciplinary confinement, notwithstanding jail policy providing for such hearings. The defendants point to a disciplinary report indicating that Moss waived his right to a hearing and pled responsible to possessing a weapon. But Moss has denied that he waived his hearing rights or admitted responsibility, noting that the disciplinary report is unsigned and calling into question its authenticity.

At the time of Moss's detention, the jail had a grievance policy – #7.13 "Inmate Grievance Procedure" – outlining an administrative process for the resolution of inmate complaints. J.A. 165. That policy, as summarized in the inmate handbook, instructed inmates first to attempt resolution by speaking with a detention officer. If that effort was unsuccessful, then inmates were to file a written grievance, requesting a grievance form from a detention officer and then returning the completed form to a staff member. As Moss acknowledges, inmates also were permitted to submit grievances, along with other requests, on the jail's electronic kiosk. Grievances were routed to the Jail Administrator, with inmates given the right to appeal an unfavorable response to a higher-ranked officer.

Moss does not dispute that he failed to submit a written grievance, before filing suit, regarding his entitlement to a disciplinary hearing. Instead, he alleges – and the defendants do not contest, for purposes of this appeal – that while he was on lockdown, jail officials refused to give him written grievance forms and denied him physical access to the electronic kiosk. Nevertheless, there is undisputed record evidence that during this lockdown period, Moss did file numerous grievances and medical requests through the kiosk, which were answered promptly. According to Moss, he was able to accomplish this by having other inmates use his kiosk pin number to file on his behalf, at least until later in the lockdown period when he says he was able to file for himself.

Most relevant here, on April 22 – during the initial 30 days of Moss's disciplinary lockdown – Moss filed a written grievance on the kiosk, complaining about his medical treatment but *not* the failure to provide him with a disciplinary hearing. Three days later, on April 25, Moss filed this lawsuit, raising claims regarding *both* his medical treatment

5

and the lack of a disciplinary hearing. Then on May 24 – while still on lockdown, and a month after filing suit – Moss filed another written grievance on the kiosk, this one complaining that he had yet to receive a disciplinary hearing.

2.

We turn now to Moss's claim regarding his medical treatment, which he alleges fell below constitutional due process standards. Upon arrival at the Madison County Detention Center on March 4, 2018, Moss informed the intake officer that he was taking several medications: a medication for a thyroid condition, Vyvanse for attention deficit hyperactivity disorder ("ADHD"), and Zoloft for post-traumatic stress disorder ("PTSD"). Moss's deliberate indifference claim focuses on alleged delays in providing him with those medications while he was detained.

Moss first asked for his medications on March 16, twelve days after his arrival (and before he was placed on lockdown on April 1). The next day, he filed two written grievances repeating his request. On March 20, Captain Tom Banks, the Jail Administrator, told Moss he would "check into this matter" and indicated on the kiosk record that the prescription would be filled at Mashburn Medical Clinic. Moss received his thyroid medication just over three weeks later, and 26 days after his first request, when he was treated at Mashburn on April 11. According to Moss, his thyroid level was so high that his treating doctor told him that "it was a wonder that [he] wasn't in a coma, because [he] hadn't had [his] medication." J.A. 146.

Moss continued to seek his mental health medications. On April 22 – while on lockdown, and as noted above – Moss filed a grievance requesting an appointment at RHA

Health Services, a mental health clinic to which he had been referred by Mashburn. The next day, Banks replied that he would have Moss seen at RHA. Moss thanked Banks on April 24 and then sued him, along with the other defendants, the next day, on April 25. About two weeks later, on May 8, Moss received ADHD and PTSD medications from RHA, 53 days after his first request. While unmedicated, Moss experienced severe anxiety, exacerbated PTSD, and suicidal thoughts.

In subsequent months, after the filing of his April 22 grievance and this § 1983 action, Moss experienced an additional delay in the receipt of his mental health medications. After the medications provided to him on May 8 ran out in early June, Moss filed several grievances and sought another appointment at RHA. Banks or Denton replied to each, with Denton stating that she had requested an appointment for Moss but could not control the timing of that appointment. *See, e.g.*, J.A. 184 ("[W]e can not make the Medical Center see you any sooner. I have put in for you a Dr. appointment."). In mid-August, Moss was treated at RHA and again received his medications.

**B.**

On April 25, 2018, Moss, still on lockdown, filed his § 1983 complaint in the District Court for the Western District of North Carolina, naming Madison County Sheriff Buddy Harwood, Sergeant Denton, and Captain Banks as defendants. Proceeding pro se – that is, without counsel – he alleged that the defendants violated his procedural due process rights in two respects: by placing him on indefinite lockdown without a disciplinary hearing, and by preventing him from using the jail's grievance system. He also alleged that the defendants deprived him of adequate medical care by failing to provide timely

7

access to his medications for thyroid disease, ADHD, and PTSD. After Moss filed a motion raising retaliation claims, as well, the district court invited him to amend his complaint, but Moss failed to do so.

The district court reviewed the complaint for frivolity under 28 U.S.C. § 1915A and dismissed Moss's claim regarding the grievance system, reasoning that access to jail grievance procedures is not constitutionally protected. *Moss v. Harwood*, No. 1:18-cv-122, 2018 WL 4620626, at *3 (W.D.N.C. Sept. 26, 2018). But the district court allowed Moss's other two claims – regarding his right to a disciplinary hearing and his medical treatment – to proceed. *Id.* at *3–4.

Following discovery, the defendants moved for summary judgment. With respect to the disciplinary hearing claim, they argued that Moss had failed to exhaust his administrative remedies before filing suit, as required by the Prison Litigation Reform Act ("PLRA"). *See* 42 U.S.C. § 1997e(a) (prohibiting prisoners from filing a lawsuit challenging prison conditions "until such administrative remedies as are available are exhausted"). Although Moss had filed multiple written grievances and medical requests while on lockdown, they contended, the only grievance regarding a disciplinary hearing was submitted on May 24, 2018, almost a month *after* suit was filed. With respect to Moss's medical treatment claim, the defendants – all non-medical personnel – argued that there was no evidence that they had been deliberately indifferent to Moss's known medical needs and that they were in any event entitled to qualified immunity. Moss, still pro se, filed both a sworn declaration and a brief in opposition.

The district court granted summary judgment to the defendants. *Moss v. Harwood*, No. 1:18-cv-122, 2019 WL 4263826, at *11–12, *14 (W.D.N.C. Sept. 9, 2019). First, the district court agreed with the defendants that Moss had failed to exhaust his procedural due process claim to a disciplinary hearing. As the court explained, the PLRA requires all inmates to exhaust administrative remedies *before* filing a § 1983 action in court. *Id.* at *8; *see Jones v. Bock*, 549 U.S. 199, 204 (2007). Moss did not contend that he had done so. Instead, he argued that his failure should be excused because he was denied access to grievance forms and the kiosk while he was on lockdown, rendering the grievance system unavailable to him during that period. *See Moss*, 2019 WL 4263826, at *2–3, *11; *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (under the PLRA, inmates "must exhaust available remedies, but need not exhaust unavailable ones"). But that argument, the district court held, was "refuted by the record," which showed that Moss in fact had "submitted multiple grievances while he was on lockdown" – including "a grievance about the lack of due process in the disciplinary proceeding [submitted] on May 24, 2018, while [Moss] was still on lockdown" but well after he had filed suit. *Moss*, 2019 WL 4263826, at *11.[1]

The court then turned to Moss's remaining claim: that the defendants exhibited deliberate indifference to his serious medical needs by causing a delay of several weeks in his receipt of his medications. *See id.* at *9, *11–12. Because Moss was a pretrial detainee, the court explained, his claim was "properly brought under the Fourteenth Amendment

---

[1] The district court also rejected Moss's argument that the PLRA did not apply to him because he was a pretrial detainee rather than a convicted prisoner. *Moss*, 2019 WL 4263826, at *11. Moss does not renew that argument on appeal.

rather than the Eighth Amendment" – which applies only to convicted prisoners – "but the analysis is the same." *Id.* at *9 (citing *Martin v. Gentile*, 849 F.2d 863 (4th Cir. 1988)). Accordingly, the district court assessed Moss's claim under the Eighth Amendment deliberate indifference standard, requiring him to show that the defendants knew, subjectively, that their actions would expose Moss to a substantial risk of harm but chose to disregard that risk. *Id.* at *9, *11–12; *see Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

The record in this case, the district court concluded, would not allow a jury to make such a finding. Instead, the "record reflects that [the defendants], none of whom are medical personnel, responded promptly" by scheduling appointments when Moss requested medical care, and did not purposefully cause any delay. *Moss*, 2019 WL 4263826, at *11–12. Nor could Moss show that the defendants would have known that a delay in receiving medication risked any serious harm to Moss. *Id.* at *12. In sum, because Moss could not demonstrate that "any of the [d]efendants' actions or inactions with regards to his medications and appointments knowingly exposed him to a risk of serious harm," he could not prevail, as a matter of law, on his deliberate indifference claim. *Id.*[2]

Moss timely appealed the district court's grant of summary judgment to the defendants, and we appointed pro bono appellate counsel.

---

[2] The district court also held that the defendants were entitled to qualified immunity because Moss had not shown a violation of a "clearly established right." *Moss*, 2019 WL 263826, at *12. We agree with the district court's merits determination, as explained below, and therefore need not address this portion of the court's analysis.

## II.

We review the district court's grant of summary judgment de novo. *Jehovah v. Clarke*, 798 F.3d 169, 176 (4th Cir. 2015). Summary judgment is appropriate only if "no material facts are disputed and the moving party is entitled to judgment as a matter of law." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc) (internal quotation marks omitted). Largely for the reasons given by the district court, we affirm the grant of summary judgment to the defendants.

## A.

We begin with the district court's holding that Moss failed to exhaust available administrative remedies with respect to his procedural due process claim. Moss does not contend that he submitted a timely written grievance regarding a hearing, consistent with the jail's grievance procedure. His position is that he was not required to exhaust that grievance procedure, because officials made it "unavailable" to him by withholding grievance forms and access to the kiosk while he was on lockdown. Like the district court, we disagree.

The PLRA mandates that "[n]o action shall be brought" in federal court by an inmate challenging prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The requirement that inmates comply with all steps of a grievance policy is important because it gives a prison a full "opportunity to correct its own mistakes" before federal litigation is launched. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation marks omitted). And given the PLRA's "mandatory language," there is no room to excuse a failure to exhaust all available remedies, even to take into

account "special circumstances" that might otherwise justify noncompliance with procedural requirements. *Ross*, 136 S. Ct. at 1856.

But there is one limit on § 1997e(a)'s mandate "baked into its text," on which Moss relies: An inmate need exhaust only "available" administrative remedies. *See id.* at 1862. If an administrative remedy "officially on the books" is not actually "capable of use to obtain relief," then the PLRA does not require exhaustion. *Id.* at 1859. The Supreme Court has identified certain circumstances in which an official grievance policy is not "capable of use" in this sense, *id.* at 1859–60, and Moss argues that his case squarely presents one such circumstance: situations in which officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860; *see Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) ("[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it."). According to Moss, he was "thwarted" from using the jail's grievance system while he was on lockdown, by the denial of written grievance forms and access to the kiosk, and thus relieved of his duty to exhaust under the PLRA.

The problem for Moss's argument, as the district court held, is the undisputed record evidence establishing that he *was* in fact able to take advantage of the grievance system while he was on lockdown. It is true, as the district court recognized, that Moss has presented unrebutted testimony that jail officials refused his requests for forms or access to the kiosk, *see Moss*, 2019 WL 4263826, at *11, from which a jury might find that officials took steps to thwart his access to the grievance process. But Moss also testified that he nevertheless was able to submit grievances – during the same lockdown period and

under precisely those constraints – by having other inmates use his kiosk pin number to file grievances for him. *See id.* at *2–3, *6. And the record evidence bears this out: Moss submitted multiple requests and grievances through the kiosk while he was on lockdown. Most tellingly, on April 22, three days before filing this lawsuit, Moss was able to file a written grievance targeted at his medical treatment, which did not include any complaint about a disciplinary hearing. And then, weeks later, Moss – still on lockdown, and still allegedly "thwarted" from availing himself of the grievance process – *did* file a written grievance raising the hearing issue, though it was too late to satisfy the PLRA. Like the district court, we think this evidence of access to the grievance system conclusively refutes Moss's allegation that the jail's administrative remedies were not "available" to him.

In response to this common-sense conclusion, Moss points to cases recognizing that an inmate able to file one grievance is not necessarily able to file others, at different times or on different topics. A prisoner's "ability to take advantage of administrative grievances is not an 'either-or' proposition," he explains, because "[s]ometimes grievances are clearly available; sometimes they are not; and sometimes there is a middle ground where, for example, a prisoner may only be able to file grievances on certain topics." *Kaba v. Stepp*, 458 F.3d 678, 685 (7th Cir. 2006); *see also Hill v. O'Brien*, 387 F. App'x 396, 401 (4th Cir. 2010) (per curiam); *Hill v. Haynes*, 380 F. App'x 268, 273 (4th Cir. 2010) (per curiam). We agree. And if there were record evidence to indicate, for instance, that Moss was able to use the grievance system on April 22 to raise issues regarding medical treatment but not disciplinary hearings, then we would have a different case. But before the district court, Moss offered no account for why he was able to file some – indeed, many – grievances and

13

requests while on lockdown but not the one required here, raising the hearing issue. Instead, Moss has effectively made this an "either-or" case, *see Kaba*, 458 F.3d at 685, alleging only a blanket denial of *all* access to the grievance system during the relevant period – an allegation that cannot be reconciled with the record evidence.

Moss also suggests that his multiple grievances and requests are not evidence of access to the jail's actual "administrative remedies," *see* 42 U.S.C. § 1997e(a), because official jail policy allows for submission of grievances only on written forms and not on the kiosk. Before the district court, however, Moss acknowledged in his testimony that inmates could submit grievances on the kiosk. And he did not challenge the sworn statement of a jail official explaining that Policy #7.13 – the policy covering inmate grievances – allows for the submission of written grievances either on forms or by using the electronic kiosk. Moreover, the evidence shows that Moss's kiosk grievances – whether submitted by Moss or by other inmates on his behalf – were treated as such by jail staff, who responded to and acted upon the requests. In this posture, we, like the district court, *see Moss*, 2019 WL 4263826, at *11, proceed on the assumption that Moss was indeed availing himself of the jail's administrative remedies when he submitted his grievances via kiosk during his lockdown.

At bottom, on this evidentiary record, Moss can prevail only if it is enough to show "unavailability" that jail officials took steps that were intended to and could have thwarted his access to the grievance system, even if he was not in fact thwarted. But that is not the rule. Instead, as many of our sister circuits have held, a grievance process is rendered "unavailable" under the PLRA only if an inmate actually is prevented from using it. *See*

14

*Hardy v. Shaikh*, 959 F.3d 578, 587–88 (3d Cir. 2020); *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018); *McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015); *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011); *Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008). Even where officials make threats or misleading statements that would deter a reasonable inmate from pursuing a grievance process, that is, the process remains "available" if the plaintiff himself was not deterred. *See*, *e.g.*, *Rinaldi*, 904 F.3d at 268–69. That is consistent with the Supreme Court's functional approach in *Ross*, asking whether a purported grievance system is in fact "not capable of use." *See* 136 S. Ct. at 1859. If an inmate is able to access a grievance process despite official threats or "machinations," *id.* at 1860, then that process is "capable of use" by him, *id.* at 1859.

That does not mean, to be clear, that if prison officials take steps to block an inmate's access to a grievance process, the inmate is obliged to find some novel way around those obstacles. *See Hardy*, 959 F.3d at 590 ("It is no answer – where a prison has . . . affirmatively misled the inmate – that the inmate should have sought advice from fellow prisoners."). The prison bears the risk that an official threat or impediment that "would deter a reasonable inmate of ordinary firmness and fortitude," *id.* at 587, will have the predictable effect of actually preventing a prisoner from filing a grievance, rendering the process unavailable and lifting the exhaustion requirement. *Id.* at 586; *cf. Ross*, 136 S. Ct. at 1859 ("Given prisons' own incentives to maintain functioning remedial processes, we expect that these circumstances" – in which grievance processes are rendered unavailable – "will not often arise."). Indeed, the defendants acknowledged as much at oral argument, conceding that had Moss *not* found a way to file grievances during the lockdown period,

15

his allegations, if credited, would establish that the grievance system was "unavailable" to him.

But where, as here, an inmate in fact is able to participate in a grievance process, notwithstanding alleged obstacles, then that process remains "available" for purposes of the PLRA. And as the district court determined, the record in this case establishes conclusively that Moss was able to submit multiple grievances while he was on lockdown, but failed to raise the disciplinary hearing claim he seeks to litigate now. *See Moss*, 2019 WL 4263826, at \*11. Accordingly, we affirm the district court's grant of summary judgment to the defendants on Moss's procedural due process claim.[3]

**B.**

We turn now to Moss's deliberate indifference claim. According to Moss, the defendants acted with deliberate indifference to his serious medical needs by delaying his receipt of his medications – for his thyroid condition, ADHD, and PTSD – and thus exposing him to a substantial risk of serious harm. The district court granted summary judgment to the defendants, finding that there was no record evidence that the defendants

---

[3] Consistent with precedent, the district court specified that it was dismissing without prejudice Moss's claim for failure to exhaust administrative remedies. *See Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal without prejudice of prisoner's civil rights claim for failure to exhaust); *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (joining several other circuits in holding that failure to exhaust under § 1997e(a) should result in dismissal without prejudice); *see also Germain v. Shearin*, 653 F. App'x 231, 234–35 (4th Cir. 2016) (affirming order granting summary judgment for failure to exhaust but modifying the dismissal to be without prejudice to plaintiff's right to refile should exhaustion become complete).

had known of such a risk and deliberately ignored it. *See Moss*, 2019 WL 4263826, at \*12. We agree.

The parties do not dispute the standard that governs this claim. Because Moss was a pretrial detainee, his deliberate indifference claim arises under the Fourteenth Amendment. *Martin*, 849 F.2d at 870. As the district court explained, however, we traditionally apply Eighth Amendment deliberate indifference precedents to such claims, *see Moss*, 2019 WL 4263826, at \*9, and Moss, like the defendants, has embraced the Eighth Amendment standard here. Under that standard, as Moss concedes, he must establish both an objective and a subjective component of deliberate indifference. *See Farmer*, 511 U.S. at 835; *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016). The objective prong requires Moss to show that the alleged delay in provision of his medications put him at a "substantial risk" of "serious harm." *See Scinto*, 841 F.3d at 225. And under the subjective prong, he can prevail only if the defendants "subjectively recognized" that there was such a risk and that their "actions were inappropriate in light of that risk." *Anderson v. Kingsley*, 877 F.3d 539, 545 (4th Cir. 2017) (internal quotation marks omitted).[4]

---

[4] As the district court recognized, under *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), pretrial detainees bringing excessive force claims under the Fourteenth Amendment are no longer required to satisfy the analogous subjective component that governs the Eighth Amendment excessive force claims of convicted prisoners. *See Moss*, 2019 WL 4263826, at \*9. But as the district court also noted, the Supreme Court has not extended *Kingsley* beyond the excessive force context to deliberate indifference claims, *see id.*, and neither has our court, *see Mays v. Sprinkle*, 992 F.3d 295, 300–02 (4th Cir. 2021) (declining to decide whether pretrial detainee must satisfy the subjective component of the Eighth Amendment deliberate indifference standard). Because Moss has expressly endorsed application of the Eighth Amendment standard – including its subjective

17

We will assume, for purposes of this appeal, that Moss can satisfy the objective prong. Moss's thyroid condition, ADHD, and PTSD were diagnosed medical conditions. According to Moss, his wait of several weeks for thyroid medication caused his thyroid level to become so elevated that his treating doctor at Mashburn believed he could have entered a coma, *Moss*, 2019 WL 4263826, at *12, which surely would qualify as "serious harm." And Moss also testified that delays in providing him with his mental health medications exacerbated his conditions and caused suicidal thoughts. *Id.* at *5, *7, *12; *cf. DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018) (discussing threats to mental health under deliberate indifference standard). So we accept, *arguendo*, Moss's position that a reasonable jury could find that at least some of the delays of which he complains posed a substantial risk of serious harm. *See Scinto*, 841 F.3d at 225.

But Moss cannot satisfy the subjective prong, because there is no record evidence that the defendants subjectively appreciated any such risk. Moss argues that he put the defendants sufficiently on notice of his medical needs by repeatedly requesting his medications. As the district court recognized, however, a request for medication does not by itself indicate an emergency, and none of Moss's communications conveyed to the defendants that immediate intervention was required to avoid a substantial risk of harm. *See Moss*, 2019 WL 4263826, at *12. And while we agree with Moss that subjective knowledge of a risk sometimes may be inferred "from the very fact that the risk was

component – to his Fourteenth Amendment claim, we have no occasion to consider that question today.

18

obvious," *Scinto*, 841 F.3d at 226 (internal quotation marks omitted), this is not one of those cases. The defendants here are non-medical personnel. Even if, as Moss argues, it is generally well known that thyroid disease is a serious illness that may have serious consequences, it does not follow that these jail officials would have understood that they were facing an urgent situation, in which a weeks-long delay in receiving medication could cause a coma. Likewise, to the extent a delay in providing ADHD and PTSD medications put Moss at a "substantial risk" of serious mental health harm, that risk was not so patently obvious "that the fact-finder could conclude that [jail officials] *did* know of it because [they] could not have failed to know of it." *See Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995); *cf. Scinto*, 841 F.3d at 231–32 (finding risk of serious harm "obvious" where inmate with severe stomach pain was "throwing up vomit and blood").

Moreover, even assuming that the defendants could be charged with knowledge of a substantial risk to Moss, Moss has produced no evidence that they also knew that their efforts to respond to Moss's requests were inappropriate in light of that risk. *See Anderson*, 877 F.3d at 545. As the district court explained, the record makes clear that the defendants answered Moss's communications promptly and requested the appropriate medical appointments for him, and it includes no evidence of any deliberate decision to delay treatment. *Moss*, 2019 WL 4263826, at *12. Moss suggests that a jury could infer this intentionality from a pattern of lengthy delays, but we disagree: Because the record indicates that the defendants – again, non-medical personnel – could neither directly provide Moss with medication nor control the speed with which their requested

19

appointments were scheduled, the mere fact of delay, by itself, does not suggest a deliberate choice to ignore a risk.[5]

Because we agree with the district court that no reasonable jury could find, on this record, that the defendants were deliberately indifferent to a known "substantial risk" of serious health consequences to Moss, we affirm its grant of summary judgment to the defendants.

## III.

For the reasons given above, we affirm the district court's grant of summary judgment to the defendants.

*AFFIRMED*

---

[5] Moss relies for part of this argument on alleged delays in July and August of 2018, post-dating both his April 22 grievance regarding his medical treatment and the filing of his complaint on April 25, 2018. The district court nevertheless addressed those delays, *see Moss*, 2019 WL 4263826, at *12, and we therefore do so here, as well. The defendants contend that those delays are not properly before us given the timing, but we need not resolve that question, since consideration of these events does not affect our ultimate conclusion.