**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 24-6270**

PATRICK RYAN MCGRAW,

　　　　　　Plaintiff – Appellant,

　　v.

THERESA C. GORE; NANCY J. WARGAS,

　　　　　　Defendants – Appellees,

　　and

N.C. DEPARTMENT OF CORRECTIONS; KIMBERLY C. WYNN; JOHN DOES,

　　　　　　Defendants.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Richard E. Myers II, Chief District Judge.  (5:19-ct-03116-M)

Argued:  December 12, 2024　　　　　　　　　　　Decided:  June 16, 2025

Before HARRIS, RICHARDSON, and QUATTLEBAUM, Circuit Judges.

Affirmed by unpublished opinion.  Judge Harris wrote the opinion, in which Judge Richardson and Judge Quattlebaum joined.

**ARGUED:**  David W. McDonald, MCDONALD WRIGHT LLP, Greensboro, North Carolina, for Appellant.  Alex Ryan Williams, NORTH CAROLINA DEPARTMENT OF

JUSTICE, Raleigh, North Carolina, for Appellees. **ON BRIEF:** Joshua H. Stein, Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees.

———————————

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

Patrick Ryan McGraw filed this action in federal court, alleging that prison officials denied him access to adequate medical care while he was an inmate in a North Carolina prison. The district court granted summary judgment to the defendants, holding that McGraw failed to exhaust available administrative remedies before filing suit as required by the Prison Litigation Reform Act. We agree with the district court and affirm its judgment.

## I.

We begin with a summary of the events most relevant to this appeal. Most of these facts are undisputed. Where they are not, we recount them in the light most favorable to McGraw, the non-moving party. *Moss v. Harwood*, 19 F.4th 614, 617 (4th Cir. 2021).

In April 2016, McGraw became ill while incarcerated at Tabor Correctional Institution ("Tabor") in the custody of the North Carolina Department of Public Safety ("DPS"). Starting on April 18, 2016, two registered nurses at Tabor – defendants Theresa Gore and Nancy Wargas – had several clinical encounters with McGraw to assess and treat his symptoms. The adequacy of these early evaluations is very much disputed, with McGraw alleging his constitutional rights were violated when Gore and Wargas failed to accurately diagnose him during this preliminary phase of his treatment.

Although McGraw was not immediately diagnosed with a serious condition, by April 28, 2016, he was admitted for inpatient treatment at Columbus Hospital. Shortly after that, McGraw's medical providers determined he suffered from an infection that had

3

traveled from his lungs to his brain. McGraw's condition was severe, and he underwent major surgeries to remove brain tissue and a lobe of his right lung.

From April 28 to June 10, 2016, McGraw was receiving inpatient medical treatment at Columbus Hospital and other medical facilities and hospitals. On June 10, he was discharged and returned to a correctional facility, where he could be provided with additional evaluation and treatment. Two months later, on August 11, 2016, McGraw was released from DPS custody.

McGraw was reincarcerated in 2018 as a result of a new criminal conviction unrelated to this appeal. He remained in DPS custody until June 12, 2019. It was during this second period of DPS custody, on April 25, 2019, that McGraw filed the *pro se* § 1983 complaint at issue in this appeal, alleging that he was provided constitutionally inadequate medical care at Tabor in April 2016, before he was hospitalized at the end of that month.

The district court dismissed McGraw's claims against nurses Gore and Wargas as barred by the statute of limitations. *See McGraw v. N.C. Dep't of Corr.*, No. 5:19-CT-3116-M, 2020 WL 5632957, at *7 (E.D.N.C. Sept. 21, 2020). We vacated that judgment in an earlier appeal, holding that the district court erred in assessing the timeliness of McGraw's complaint and that the claims against Gore and Wargas could proceed. *See McGraw v. Gore*, 31 F.4th 844, 851, 854 (4th Cir. 2022).

That brings us to the district court decision now on appeal. After discovery, the district court granted the defendants' motion for summary judgment, holding that McGraw had failed to exhaust available administrative remedies as required by the Prison Litigation Reform Act. *McGraw v. N.C. Dep't of Corr.*, No. 5:19-CT-3116-M, 2024 WL 779227, at

4

*10 (E.D.N.C. Feb. 26, 2024).  At no point prior to filing suit, the district court explained, had McGraw availed himself of the administrative grievance process established by North Carolina's DPS.  *Id.* at *9-10.  The district court recognized that McGraw had been severely ill during the period when he was receiving inpatient treatment at Columbus Hospital and other hospitals.  *Id.* at *3, *9.  But once he was discharged from the hospital and returned to a correctional facility, the court concluded, the record evidence showed that McGraw was not so ill that he would have been unable to access the grievance procedure.  *Id.* at *9.

McGraw timely appealed.

## II.

We review *de novo* the district court's grant of summary judgment.  *Jehovah v. Clarke*, 798 F.3d 169, 176 (4th Cir. 2015).  We agree that McGraw failed to exhaust available administrative remedies as required by the Prison Litigation Reform Act ("PLRA") and affirm the judgment of the district court.

The PLRA mandates that "[n]o action shall be brought" in federal court by an inmate challenging prison conditions "until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Until a prisoner has "properly" exhausted an available administrative process – completing the process in accordance with all applicable rules and deadlines – he may not bring a federal action.  *Woodford v. Ngo*, 548 U.S. 81, 88, 93-95 (2006); *see also Moss*, 19 F.4th at 621.

North Carolina's DPS has established an administrative grievance process formally known as the "Administrative Remedy Procedure," or "ARP."  *See Griffin v. Bryant*, 56

5

F.4th 328, 331 (4th Cir. 2022).[1] The ARP sets out a formal, three-step process for resolving prisoners' complaints, beginning with a prisoner's submission of a written grievance within 90 days of the incident that gives rise to the complaint. *Id.*; *see also* J.A. 110-15.

It is undisputed that McGraw never initiated this process with a written grievance. As the district court noted, McGraw did not allege in his complaint that he filed a written grievance during either relevant period of DPS custody – after he returned from the hospital in June 2016 and before he was released in August 2016, or after he was reincarcerated in 2018. *See McGraw*, 2024 WL 779227, at *7 ("[O]n the face of the initial complaint, [McGraw] marked that the grievance process as to the facts alleged was incomplete and he wrote, 'grievance process will be completed after this litigation is complete.'").[2] And McGraw continues to concede on appeal that he never filed a written grievance pursuant to the ARP.

McGraw argues, however, that he nevertheless properly exhausted, pointing to the ARP's "emergency grievances" procedure. Under § .0308 of the ARP, it appears that an inmate may forgo the regular grievance process – and simply "present himself" to medical staff – if he faces a "substantial risk of physical injury or other serious and irreparable harm

---

[1] The version of the ARP relevant here was issued on August 1, 2013. J.A. 107.

[2] This case is somewhat unusual, in that McGraw was in DPS custody for two separate periods of time, and filed suit during the second period for an alleged constitutional violation in the first. But on appeal, McGraw does not dispute that he was covered by the PLRA when he filed this case as a DPS inmate in April 2019. *See McGraw*, 2024 WL 779227, at *6. And the defendants agreed at oral argument that McGraw would *not* have been subject to the PLRA and its exhaustion requirement had he filed suit in the nearly two years between his two custodial sentences.

6

. . . if regular time limits are followed." J.A. 112 (ARP § .0308(a), (b)). But at the time McGraw filed his suit in April 2019 – three years after the relevant events – he was *not* facing any imminent injury, as he conceded at oral argument, and following the regular grievance process and time limits would not have put him at any risk of harm. Rather than seeking immediate relief in the form of medical treatment, as contemplated by the ARP, *see* J.A. 112 (allowing inmate "in need of urgent medical care" to "present himself to a member of the medical [] staff"), he was seeking retrospective damages for an injury he allegedly sustained three years prior.[3] Under those circumstances, the ARP's emergency grievance provision does not apply.

McGraw also contends that he was not required to exhaust his remedies under the ARP because that process was not practically "available" to him, given the severity of his illness. McGraw is correct that under the PLRA, an inmate must exhaust only "available" administrative remedies; if a remedy is "officially on the books" but not actually "capable of use to obtain relief," then there is no exhaustion requirement. *Moss*, 19 F.4th at 621 (quoting *Ross v. Blake*, 578 U.S. 632, 643 (2016)). And at least two federal courts of appeals have held that a sufficiently severe health condition or medical emergency may render an administrative grievance procedure "unavailable" to an inmate. *See Rucker v.*

---

[3] McGraw suggests that the nature of his claim – money damages for past harm – would make exhaustion futile, because the ARP does not allow for damages. There may indeed be questions as to whether and under what circumstances damages can be awarded under the ARP. But that does not excuse exhaustion under the Prison Litigation Reform Act: "Even when [a] prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *see also Booth v. Churner*, 532 U.S. 731, 741 (2001) (PLRA requires exhaustion "regardless of the relief offered through administrative procedures").

7

*Giffen*, 997 F.3d 88, 94 (2d Cir. 2021); *Smallwood v. Williams*, 59 F.4th 306, 319 (7th Cir. 2023). Indeed, the district court seems to have assumed as much here, suggesting that McGraw could *not* have been expected to exhaust the ARP's administrative remedies during the period of his acute illness, when he was hospitalized and undergoing surgeries. *See McGraw*, 2024 WL 779227, at *7-9.

But none of that helps McGraw. Even assuming, without deciding, that a severe illness could under some circumstances render a grievance process "unavailable," that is not what happened here. Instead, as the district court explained, the record makes clear that once McGraw was discharged from the hospital and returned to prison in June 2016 – and until he was released from custody two months later, in August 2016 – "he was no longer so ill that the grievance procedure was rendered wholly unavailable" to him. *See id.* at *9. To the extent McGraw argues that the record is inconclusive on this point, creating a dispute of fact for a jury to resolve, *see* Fed. R. Civ. P. 56(a), we disagree. As the district court concluded after a careful review of McGraw's medical records, there is nothing to support a finding that McGraw was prevented by his condition from availing himself of the grievance procedure after he was discharged from the hospital. *McGraw*, 2024 WL 779227, at *9.

Finally, McGraw argues that the weeks during which he was hospitalized should equitably toll the ARP's 90-day period for the filing of a written grievance. But McGraw's problem is not that he filed a grievance outside the 90-day period; it is that he did not file a grievance at all. Equitable tolling – in the exceptional cases in which it applies – may excuse a *late* filing. *See, e.g.*, *Battle v. Ledford*, 912 F.3d 708, 718 (4th Cir. 2019). Here,

8

however, there is no late filing to excuse, and the district court's holding that McGraw failed to exhaust is not based on enforcement of the ARP's 90-day "deadline."[4]  *See McGraw*, 2024 WL 779227, at \*7.  This case is not about when McGraw filed a grievance, in other words, and application of the PLRA's exhaustion requirement can begin and end with the fact that McGraw failed to avail himself of the grievance procedure at any time before filing this suit.[5]

### III.

For the foregoing reasons, the judgment of the district court is affirmed.

*AFFIRMED*

---

[4] Enforcement of the 90-day period contemplated by the ARP appears to be discretionary in nature, with the policy providing only that a grievance "*may* be rejected" if it is filed more than 90 days after the incident giving rise to the complaint.  J.A. 110 (ARP § .0306(c)) (emphasis added).

[5] We have considered the other arguments McGraw raised before the district court and on appeal, and agree with the district court that they are unavailing.

9