**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-1964

JEFFERY A. MAYS, Administrator for the Estate of David Wayne Mays, deceased,

Plaintiff - Appellant,

v.

SHERIFF RONALD N. SPRINKLE; DELBERT DUDDING; KENNY PARKER;
DANIEL R. FAULKNER; DEPUTY GOLLA; DEPUTY HONAKER;
LIEUTENANT T. BELCHER; DEPUTY M. C. PRILLAMAN; SERGEANT B. M.
BYERS,

Defendants - Appellees.

Appeal from the United States District Court for the Western District of Virginia, at
Roanoke. Glen E. Conrad, Senior District Judge. (7:18-cv-00102-GEC)

Argued: October 27, 2020                          Decided: March 30, 2021

Before GREGORY, Chief Judge, and DIAZ and RICHARDSON, Circuit Judges.

Reversed and remanded by published opinion. Judge Richardson wrote the opinion, in
which Chief Judge Gregory and Judge Diaz concurred.

**ARGUED:** Isaac Abraham McBeth, HALPERIN LAW CENTER, Glen Allen, Virginia,
for Appellant. Christopher S. Dadak, GUYNN WADDELL CARROLL & LOCKABY,
P.C., Salem, Virginia, for Appellees. **ON BRIEF:** Jonathan E. Halperin, Andrew
Lucchetti, HALPERIN LAW CENTER, Glen Allen, Virginia; Paul R. Thomson, III,
THOMSON LAW FIRM, PLLC, Roanoke, Virginia, for Appellant. Jim H. Guynn, Jr.,
GUYNN WADDELL CARROLL & LOCKABY, P.C., Salem, Virginia, for Appellees.

RICHARDSON, Circuit Judge:

This suit stems from allegations of deliberate indifference to the medical needs of David Mays. After Mays was arrested for public intoxication, he was placed in a cell at the county jail to sober up. He was later found dead. His estate then sued the officers involved. But the district court granted the officers' motion to dismiss. We disagree. Mays has alleged enough facts to plausibly state a claim for constitutionally inadequate medical care for which the officers are not entitled to a dismissal based on qualified immunity at this litigation stage. So we reverse.

## I.     Background

In 2016, a Botetourt County deputy found Mays asleep and slumped over the steering wheel of his parked vehicle. Sitting next to Mays was a bag of prescription pills. And, upon awaking, Mays claimed to have taken gabapentin and alprazolam. Slurring his speech, Mays struggled to stand up and stay awake. On that night, he was charged with profane swearing and public intoxication but was "released on his own recognizance, as he was sober enough to leave under his own power." J.A. 35.

The next evening, Mays was again intoxicated in his vehicle. A 911 call reported that Mays "had consumed alcohol and prescription narcotics and that he was extremely intoxicated." J.A. 35.[1] The caller asked for help getting Mays out of the truck and requested medical care. Deputy Daniel Faulkner responded first. He saw Mays "sitting in

---

[1] Mays's First Amended Complaint alleges that his mother placed this 911 call, but the parties have since agreed that a stranger made the call. In any event, the caller's identity does not bear on our decision.

the cab of his pickup truck so intoxicated that he could hardly lift his head to communicate." *Id.* With bloodshot eyes, Mays mumbled and slurred his speech. Deputy Faulkner escorted Mays to the back of the truck, where Mays held on to steady himself. Mays eventually laid down in the bed of the truck even though it was full of water. Deputy Faulkner noticed a bag in the truck containing bottles of prescription narcotics: gabapentin and citalopram. The gabapentin had been prescribed three days earlier and was missing ninety-one capsules. The citalopram was from almost three weeks earlier and was missing all thirty capsules.

With this information, Deputy Faulkner called the Commonwealth Attorney's Office to discuss potential charges. Based on that discussion, he arrested Mays for public intoxication. Sergeant Steven Honaker arrived and helped Mays into a patrol car to go see a magistrate judge. On the way, Mays passed out and began to snore, prompting Deputy Faulkner to try to wake him. Mays only woke up when they arrived. But then he was unable to get out of the car by himself. So Deputy Faulkner took Mays's feet and placed them on the ground.

Once Mays was helped from the car, Deputy Michael Prillaman and Lieutenant Travis Belcher walked Mays into the courtroom. There, Mays was unable to sit upright on the bench, so Lieutenant Belcher directed him to "sit at the end of the bench and lean against the wall to keep from falling over." J.A. 37. After a brief hearing, the magistrate judge ordered Mays held until he became sober.

Sergeant Brandon Byers and Lieutenant Belcher took Mays to the county jail. Mays required assistance removing his shoes, eyeglasses, and other personal effects before being

3

put in a cell. At no point—from the 911 call to the door of his cell closing—did Mays receive any medical attention.

Several hours later, Lieutenant Belcher and Deputy Prillaman conducted a security check and saw Mays lying on a sleeping mat on the floor of his cell. Roughly twenty minutes later, Sergeant Byers again checked on Mays and realized Mays was unconscious. He tried unsuccessfully to wake Mays before deputies performed CPR until emergency medical personnel arrived. Mays died from acute hydrocodone, gabapentin, citalopram, and alprazolam intoxication.

Mays's estate sued the officers. In Count II of the amended complaint, Mays asserted the officers' failure to provide medical care violated his rights under the Eighth and Fourteenth Amendments.[2] The officers sought to dismiss this count under Rule 12(b)(6). The district court granted the motion: holding both that Mays failed to plead enough facts to make out a deliberate-indifference-to-medical-care claim and that the officers were entitled to qualified immunity.

Mays timely appealed the dismissal of Count II, and we have jurisdiction. *See* 28 U.S.C. § 1291.

---

[2] The suit was brought by Mays's brother as administrator of Mays's estate. Count I of the amended complaint asserted a wrongful-death claim under Virginia state law. Count III asserted a § 1983 claim for violating Mays's rights under the Eighth and Fourteenth Amendments against the officers' supervisors for creating a policy that denied, delayed, and withheld medical care. Mays appeals neither the dismissal of the supervisory claim in Count III nor the decision to decline supplemental jurisdiction over the state-law claim in Count I after Counts II and III were dismissed, *see* 28 U.S.C. § 1367(c)(3).

4

## II. Discussion

We review de novo the district court's dismissal. *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). A Rule 12(b)(6) motion to dismiss tests only "the sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). So the district court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in plaintiff's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But "legal conclusions" and "conclusory statements" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Id.*

To infer that the officers may be liable requires that they both (1) violated the Constitution and (2) are not entitled to qualified immunity. We first discuss the legal framework and then apply it under the motion-to-dismiss standard.

### A. Legal framework

Mays alleged that the denial of medical care violated both the Eighth Amendment's prohibition on cruel and unusual punishment and the Fourteenth Amendment's Due Process Clause. But since Mays was a "pretrial detainee and not a convicted prisoner," the Fourteenth Amendment, and not the Eighth Amendment, governs his claim. *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). As a pretrial detainee, Mays cannot be subject to any form of "punishment." *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990). The

5

"precise scope" of this Fourteenth Amendment right remains "unclear." *Martin*, 849 F.2d at 871. But a pretrial detainee makes out a violation at least where "he shows deliberate indifference to serious medical needs" under cases interpreting the Eighth Amendment. *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *see also id*. (observing that "[t]he due process rights of a pretrial detainee are at least as great as the eighth amendment protections available to the convicted prisoner"). So even though Mays's claim arises under the Fourteenth Amendment, we have traditionally looked to Eighth Amendment precedents in considering a Fourteenth Amendment claim of deliberate indifference to serious medical needs.

An Eighth Amendment claim for deliberate indifference to serious medical needs includes objective and subjective elements. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). The objective element requires a "serious" medical condition. *Id.* A medical condition is objectively serious when it either is "diagnosed by a physician as mandating treatment" or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)). And for the subjective element, the prison official must have acted with a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The subjective state of mind required is that of "deliberate indifference . . . 'to inmate health or safety.'" *Scinto*, 841 F.3d at 225 (quoting *Farmer*, 511 U.S. at 834). And deliberate indifference requires that the official have "had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Jackson*, 775 F.3d at 178; *Parrish ex. rel. Lee*

6

*v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004) ("[D]eliberate indifference requires a showing that the defendants . . . *actually knew* of and *ignored* a detainee's serious need for medical care." (quoting *Young v. City of Mount Ranier*, 238 F.3d 567, 575–76 (4th Cir. 2001))).

Mays now argues that the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), altered this deliberate-indifference standard when applied to pretrial detainees. *Kingsley*, he claims, requires turning the subjective element into a purely objective one.[3] We need not resolve this argument as that standard would make no difference here because of qualified immunity.

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (cleaned up). That right must not be defined "at a high level of generality" but with precision. *City & Cnty. of S.F. v. Sheehan*, 135 S. Ct. 1765, 1775–76 (2015). And that

---

[3] Mays's response to the motion to dismiss agreed that his deliberate-indifference claim had a subjective and objective component. J.A. 76–77. He did not argue, as he does now, that *Kingsley* altered that standard. The district court identified the issue, noted that the parties had not addressed it, and determined that *Kingsley* did not require applying a standard different from what Mays sought. Only then did Mays seek to alter the judgment under Rule 59(e) based on *Kingsley*. J.A. 106–10.

precision requires looking to the law *at the time* of the conduct in question. *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018); *al-Kidd*, 563 U.S. at 741.

On the night of Mays's death, it was clearly established that "a pretrial detainee ha[d] a right to be free from any form of punishment under the Due Process Clause of the Fourteenth Amendment." *Belcher*, 898 F.2d at 34. And that right required "that government officials not be deliberately indifferent to any serious medical needs of the detainee." *Id.*; *accord Martin*, 849 F.2d at 871. At that time, our caselaw considered a deliberate-indifference claim to require both an objectively serious medical condition and subjective knowledge by a prison official of both the "serious medical condition and the excessive risk posed by the official's action or inaction." *Jackson*, 775 F.3d at 178; *see also Brown v. Harris*, 240 F.3d 383, 389 n.6 (4th Cir. 2001) (reiterating that "the same 'deliberate indifference' standard applies to both inmates and pretrial detainees"). The clearly established inquiry asks whether "any reasonable official in the defendant's shoes would have understood that he was violating" then-existing law, including any then-existing objective or subjective elements. *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018); *see also West v. Murphy*, 771 F.3d 209, 214 (4th Cir. 2014); *Kedra v. Schroeter*, 876 F.3d 424, 432, 440, 444 (3d Cir. 2017); *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1028 n.1, 1033 (10th Cir. 2020).

We had not decided whether *Kingsley*'s excessive-force-claim rationale extended to deliberate-indifference claims by the time Mays died. And we still have not. Both before and after Mays's death, we said a pretrial-detainee-medical-deliberate-indifference claim required both an objectively serious medical condition and subjective knowledge of the

condition and the excessive risk posed from inaction. *See Doe 4 ex rel. Lopez v. Shenandoah Valley Juv. Ctr. Comm'n*, 985 F.3d 327, 340 (4th Cir. 2021); *Harris*, 240 F.3d at 388–89.[4] So regardless of *Kingsley*, qualified immunity turns on whether "any reasonable official in the defendant's shoes would have understood that he was violating" that objective and subjective standard. *Kisela*, 138 S. Ct. at 1153. Without allegations that plausibly satisfy both the objective and subjective elements, the officers would have a right to dismissal based on qualified immunity.[5] Said another way, if the allegations show that

---

[4] In the wake of *Kingsley*, the Second, Seventh, and Ninth Circuits adopted a completely objective standard for pretrial-detainee-medical-deliberate-indifference claims that requires showing that a reasonable officer would have recognized the serious medical condition and appreciated the excessive risk to the detainee's health. *See Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017); *Miranda v. Cnty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018); *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc). The Fifth, Eighth, and Eleventh Circuits cabined *Kingsley* to its facts—pretrial-detainee-excessive-force claims—and continue to require subjective knowledge of the condition and risk for pretrial-detainee-deliberate-indifference claims. *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 & n.4 (5th Cir. 2017); *Whitney v. City of St. Louis*, 887 F.3d 857, 860 n.4 (8th Cir. 2018); *Dang ex rel. Dang v. Sheriff, Seminole Cnty.*, 871 F.3d 1272, 1279 n.2 (11th Cir. 2017). While we have not directly addressed the import of *Kingsley*, we did recently state that a pretrial detainee's claim of inadequate medical care requires proof "(1) that the detainee had an objectively serious medical need; and (2) that the official subjectively knew of the need and disregarded it." *Doe 4 ex rel. Lopez*, 985 F.3d at 340. But there, neither party raised *Kingsley* and the discussion should not be read to resolve this issue. *See Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").

[5] Plaintiffs bear the burden of proof to show that a constitutional violation occurred. But, at least in our Circuit, defendants bear the burden of showing that the violation was not clearly established, and they are therefore entitled to qualified immunity. *Henry v. Purnell*, 501 F.3d 374, 378 (4th Cir. 2007); *see also id.* at 378 nn.4–5 (collecting cases that place the qualified-immunity burden on plaintiffs). Even so, where defendants raise a qualified-immunity defense at the motion-to-dismiss stage we must ask whether a reasonable officer could have believed that their actions or omissions, as alleged in the
(Continued)

the officers lacked the required subjective knowledge, then the officers would not have violated *clearly established* law. Only if the allegations plausibly show an objectively serious medical condition and subjective knowledge by the officers will Mays's claim clear the qualified-immunity hurdle.

And by clearing the qualified-immunity hurdle, Mays would have also plausibly alleged a violation of his rights under the Fourteenth Amendment, whatever the standard. The officers' subjective knowledge necessarily establishes any post-*Kingsley* objective standard (that is, whether every reasonable officer would have recognized the serious medical condition and appreciated the excessive risk to the detainee's health). *See Darnell*, 849 F.3d at 35; *Castro*, 833 F.3d at 1072. If the deliberate-indifference standard for pretrial detainees continues to include a subjective component (and is thus unchanged by *Kingsley*), then the qualified-immunity finding satisfies the constitutional-violation standard as well. So no matter if the deliberate-indifference standard for pretrial detainees continues to include a subjective component, the qualified-immunity determination resolves whether Mays's allegations establish a plausible claim.

## B.    Analysis

So this appeal hinges on whether Mays pleaded sufficient facts to show both that he had an objectively serious medical condition and that the officers had subjective knowledge of the condition and the excessive risk posed by inaction.

---

complaint, were lawful (that is, the violation was not clearly established at the time). *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987); *see also al-Kidd*, 563 U.S. at 735. If so, defendants are entitled to dismissal before discovery. *Anderson*, 483 U.S. at 646 n.6; *see also Jenkins v. Medford*, 119 F.3d 1156, 1159 (4th Cir. 1997) (en banc).

We look first to the objectively-serious-medical-condition element. No physician diagnosed Mays's medical condition as one mandating treatment. So Mays's need for a doctor's attention must have been so obvious that a layperson would easily recognize it. *See Scinto*, 841 F.3d at 225 (quoting *Iko*, 535 F.3d at 241). Mays's complaint alleged that the officers knew that a 911 caller requested assistance and medical care for Mays; they knew that Mays was "extremely intoxicated" and had consumed drugs and alcohol, J.A. 35, 37; they knew his level of intoxication substantially inhibited his ability to talk, walk, and even sit; and they witnessed his unconscious or semi-conscious state throughout the evening.

The district court determined that those allegations did "not support the conclusion that [Mays's] need for medical attention was sufficiently obvious," J.A. 100, relying on *Grayson v. Peed*, 195 F.3d 692 (4th Cir. 1999), and *Burnette v. Taylor*, 533 F.3d 1325 (11th Cir. 2008). But those cases differ significantly from Mays's. In *Grayson*, an officer arrived at a shopping mall where the decedent, Collins, was "acting crazy." 195 F.3d at 694. Collins was lying on the bathroom floor repeating, "I love everyone" over and over. *Id.* He resisted arrest, forcing the officer to restrain him. *Id.* During a search of his backpack, officers found marijuana and phencyclidine. *Id.* Collins, who had continued to act irrationally, was taken to a detention center. *Id.* "[H]is speech was slurred, and he kept repeating in an intoxicated manner, 'I can't believe this is all over a traffic ticket.'" *Id.* After being taken to his cell, he tried to crawl out before being subdued with pepper spray. *Id.* The next morning, Collins continued to pose a problem to officers, requiring multiple officers to restrain him. *Id.* During one struggle, he was punched seven to nine times,

11

knocked unconscious, and then diagnosed as brain dead. *Id.* at 694–95. He died at the hospital the next day. *Id.* at 695.

We affirmed the district court's grant of summary judgment to the officers, concluding that "there was no objective evidence available to [the officer] at the time of the incident that Collins had a serious need for medical care." *Id.* We recognized that "Collins exhibited [] no visible external injuries. He did not have trouble breathing. He was not bleeding, was not vomiting or choking, and was not having a seizure." *Id.* Instead, he was "conscious, at least somewhat responsive, and able to answer questions." *Id.* While Collins had an enlarged heart and a previous congestive-heart-failure diagnosis, only Collins knew that information and he failed to tell the officers. *Id.* Ultimately, "[h]is symptoms hardly distinguish[ed] him from the multitude of drug and alcohol abusers the police deal with everyday [sic]." *Id.* at 696. We concluded that the officers could not be faulted for believing that Collins needed only "to sleep it off." *Id.*

Similarly, in *Burnette*, the Eleventh Circuit reversed the district court's denial of defendants' summary-judgment motion, concluding that no defendant "deliberately ignored a serious medical condition that was obvious or known to him." 533 F.3d at 1331–32. The decedent, Buster, was arrested after his stepfather reported that Buster had broken into his house and stolen prescription narcotics. *Id.* at 1327. Officers discovered Buster dead in his cell the morning after his arrest as a result of a drug overdose. *Id.* at 1327, 1329. Buster's father sued two deputies and two jailers. *Id.* at 1327, 1330. The two deputies knew Buster was "strung out" on pills, had glassy eyes and dilated pupils, appeared to be under the influence of something, and had prescription pills. *Id.* at 1331.

12

But the Eleventh Circuit concluded that this information did not make it obvious that Buster had a serious medical condition. *Id.* Nor did the information known to one of the jailers make it obvious that Buster had a serious medical condition rather than merely exhibiting behavior "consistent with some form of intoxication." *See id.* at 1332 (describing the jailer's knowledge that Buster had prescription pills when arrested, had slurred speech, needed assistance moving from one cell to another, rolled his eyes back in his head during the transfer, was snoring during a cell check, and was laughing and talking with his cellmates after being placed in the cell).

Mays's behavior before his death contrasts with Collins's circumstances in *Grayson*. Throughout his arrest and incarceration, Collins was conscious, violent, and active. By contrast, Mays was lethargic, inactive, and compliant (as much as possible given his physical state). While it often took multiple officers to subdue Collins, it often took multiple officers to assist Mays in the most elementary of movements. We focused on the lack of visible external injuries on Collins after his hallucinogenic episode because such injuries were the only objective evidence that could have made it obvious that he needed immediate medical care. But, even without external injuries, Mays's allegations lead to a reasonable inference of a drug overdose, plausibly distinguishing him from "the multitude of drug and alcohol abusers the police" encounter. *Grayson*, 195 F.3d at 696.

Likewise, the symptoms of Buster's medical condition in *Burnette* were mild compared to Mays's. Buster may have appeared to be under the influence and in possession of pills, but his appearance and behavior failed to make it obvious that he required medical attention. Officers often deal with intoxicated detainees who never require medical

13

attention.  But here, the initial 911 report explained that Mays's consumption of alcohol and prescription narcotics left him extremely intoxicated and needing medical care.  J.A. 35. What the officers are then alleged to have observed plausibly confirms those basic facts:  Mays could barely communicate, could not move his extremities without assistance, and could not hold himself up when he sat down.  Mays's failure to tell the officers that he had consumed a lethal amount of drugs, assuming he could articulate as much, matters not when we consider the bag of prescription pills in Mays's truck along with his almost vegetative state and the 911 caller's request for medical attention.  This plausibly goes beyond the typical officer's interaction with an intoxicated person.

Regardless of their factual distinctions, *Grayson* and *Burnette* differ from this case because they both granted *summary judgment* to defendants.  On summary judgment, the court views *all* material evidence to decide whether the undisputed facts could permit a reasonable jury to return a verdict for the plaintiff.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  But on a motion to dismiss, the court must look to whether the complaint's allegations alone state a plausible claim for relief.  *Iqbal*, 556 U.S. at 678; *see also al-Kidd*, 563 U.S. at 735.  Doing so requires drawing all reasonable factual inferences in plaintiff's favor.  *Erickson*, 551 U.S. at 94; *Nanni,* 878 F.3d at 452.  Yet the officers here seek to question their knowledge about Mays's use of pills and discount the inferences to be drawn from the 911 call and Mays's appearance.  But on a motion to dismiss, we cannot rely on facts not found in the complaint or draw inferences in the officers' favor.  So we

14

must conclude that Mays has plausibly alleged that his need for medical care was obvious enough to make it easily recognizable.[6]

Turning to the second element of Mays's deliberate-indifference claim, we hold that the complaint's allegations plausibly show the officers had subjective knowledge of Mays's serious medical condition and of the excessive risk posed by their inaction. The district court acknowledged that Deputy Faulkner noticed the prescription pills in Mays's truck and that Mays was reported to have consumed alcohol and prescription narcotics. But the district court discounted this information, noting that Mays did "not allege that Deputy Faulkner or any of the other defendants were aware of the specific nature of the drugs found in [Mays's] truck or that he had consumed an amount large enough to put him at serious risk of harm." *Id.* Nor, the district court stated, did the officers see Mays consume drugs or learn from Mays that he had taken medication and mixed it with alcohol. *Id.*

This analysis fails to accept Mays's allegations as true and draw all reasonable inferences in his favor. The amended complaint alleges that the officers had knowledge that Mays "was extremely intoxicated, had taken large amounts of prescription medication and possibly mixed that medication with alcohol." J.A. 37. The district court correctly

---

[6] The officers also contend that because Mays was arrested and released on his own recognizance after showing similar signs of intoxication the night before his death, it was reasonable for the officers to believe he did not have a serious medical need the following night. But the complaint does not allege the degree of similarity between the two encounters that the officers assert. How these two encounters were similar or different, whether those similarities or differences matter, and what inferences can be drawn from the repeated interactions are not questions for this stage of the case.

15

noted that the amended complaint did not allege that the officers knew Mays had consumed enough drugs to put him at serious risk of harm. But that is a logical inference based on the pleaded facts, especially considering how Mays presented and the bottles of prescription narcotics. That inference is supported by the 911 call explaining that Mays needed medical help after becoming extremely intoxicated from narcotics and alcohol. There may well be factual disputes about the content or source of the call. And the officers may dispute their knowledge of it and of Mays's consumption of pills (along with other facts alleged). But those questions and others are for summary judgment or trial.

As a result, we conclude that the complaint plausibly alleges that Mays had an objectively serious medical condition requiring medical attention and that the officers subjectively knew of that need and the excessive risk of their inaction. That is enough to overcome qualified immunity and survive a motion to dismiss.

\* \* \*

On a motion to dismiss, we must accept the well-pleaded facts and draw reasonable inferences in favor of the plaintiff. Mays has alleged enough facts to make out a plausible claim for deliberate indifference to his serious medical condition under the Fourteenth Amendment.[7] The judgment below is

REVERSED AND REMANDED.

---

[7] We decline to address any alternative grounds for affirming all or part of the dismissal.

16