UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

No. 21-6422

─────────────

KEVIN YOUNGER,

Plaintiff – Appellee,

v.

TYRONE CROWDER,

Defendant – Appellant.

─────────────

Appeal from the United States District Court for the District of Maryland, at Baltimore. Richard D. Bennett, Senior District Judge.  (1:16-cv-03269-RDB)

─────────────

Argued:  October 25, 2022                          Decided:  August 24, 2023

─────────────

Before RICHARDSON and RUSHING, Circuit Judges, and Sherri A. LYDON, United States District Judge for the District of South Carolina, sitting by designation.

─────────────

Affirmed by published opinion.  Judge Richardson wrote the opinion, in which Judge Rushing and Judge Lydon joined.

─────────────

**ARGUED:**  Robert A. Scott, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellant.  Allen Eisner Honick, FURMAN HONICK LAW, Owings Mills, Maryland, for Appellee.  **ON BRIEF:**  Brian E. Frosh, Attorney General, Ann M. Sheridan, Assistant Attorney General, Justin E. Fine, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellant.  David Daneman, WHITEFORD, TAYLOR & PRESTON, LLP, Baltimore, Maryland, for Appellee.

RICHARDSON, Circuit Judge:

Kevin Younger was brutally beaten by three Maryland corrections officers because they believed he had taken part in an assault on another officer. He sued their warden, Tyrone Crowder, along with the officers who attacked him and their direct supervisors. A federal jury awarded Younger $700,000.

Crowder appeals. He argues that this case should never have proceeded to trial because Younger failed to exhaust his administrative remedies before suing. He also believes the district court should have found that the evidence failed to support the jury's verdict and that he was entitled to qualified immunity. We reject his arguments and affirm the district court. Younger was not required to exhaust because no administrative remedies were available, the evidence supports the jury's verdict, and Crowder was not entitled to qualified immunity based on the facts found by the jury.

## I.    Background

Younger was a pretrial detainee at Maryland Reception Diagnostic and Classification Center. Officer Alade Ganiyu worked at the Center. One day, in 2013, he was supervising inmates when one began acting insubordinate. Officer Ganiyu tried to handcuff him, but several other inmates came to his aid by restraining and beating Officer Ganiyu. The assault ended only when other officers arrived to break up the scrum. Officer Ganiyu suffered severe injuries, leading to an ambulance ride to the hospital. He identified

2

Younger as one of his assailants.[1]  So Younger was placed in administrative segregation away from the Center's general population.

Word spread fast about the incident.  Crowder learned of it that day.  By the next morning, new officers starting their shift were told the news.  This included Officers Richard Hanna, Jemiah Green, and Kwasi Ramsey.  Those three officers got the names and locations of the inmates allegedly involved in the assault.[2]  They proceeded to the Center's armory, picked up handcuffs and pepper spray, and then marched throughout the Center brutally attacking each alleged assailant.

The officers' assaults were vicious.  Younger's lasted about four minutes.  He testified that the officers entered his cell, threw him off the top bunk, and began striking him with handcuffs and kicking him.  They slammed his head into the side of the toilet.  And they left him lying in a pool of blood on his cell's floor.  When a medical alert for Younger came over the radio, the same attacking officers responded.  They escorted Younger to the medical unit, ordering him to explain his injuries by writing "I fell off my bunk" on the medical report.

---

[1] Younger, however, testified that he tried to break up the assault by pulling one of the attacking inmates off Officer Ganiyu.

[2] How exactly the officers obtained this information was disputed at trial. Hanna claimed that Green and Ramsey approached him with a list of names and locations. Ramsey alleged that Lieutenant Dupree provided him with the information and said he wanted "blood for blood." J.A. 999.  Dupree, who was also a defendant, maintains that he neither said "blood for blood" nor provided the officers with the inmates' names and locations.  J.A. 1522, 1524.

3

Crowder learned about the attack on Younger the day it happened. Department standards of conduct required him to inform the Intelligence and Investigative Division within two hours of learning of the incident.[3] But he did not do so until the following evening. The Intelligence and Investigative Division investigated the assaults, ultimately issuing a report criticizing Crowder's handling of Officer Ganiyu's assault and its retaliatory fallout.

Younger, for his part, attempted to file administrative grievances about the attack. It is unclear exactly how many grievances Younger filed. But we know that he started Maryland's inmate grievance process about two months after the incident. That process has three levels. Younger engaged the first level by filing a request for administrative remedy with the warden. He also appealed to the final level, the Inmate Grievance Office. But it does not appear that Younger sought relief at the intermediate level, from the Commissioner of Corrections, as the Inmate Grievance Office dismissed his grievance for failing to appeal to the Commissioner.

Having failed to get administrative relief, Younger sued Crowder, the officers who attacked him, and their direct supervisors, in federal court under 42 U.S.C. § 1983. The case was ultimately decided by a jury, which returned a verdict for Younger, awarding him $700,000 in damages. Crowder moved to set aside the verdict as a matter of law, but the

---

[3] The Intelligence and Investigative Division investigates criminal and professional misconduct by correctional officers. Md. Corr. Servs. § 10-701(a)(3).

district court denied his motion. Crowder timely appealed that decision, and we have jurisdiction.[4] 28 U.S.C. § 1291.

## II.    Discussion

Crowder challenges the district court's denial of his post-trial motion for judgment as a matter of law. He first argues that Younger's suit is barred because Younger did not exhaust his administrative remedies. He also claims that there was insufficient evidence to support the jury's verdict and that, in any event, he was entitled to qualified immunity. We first address Crowder's exhaustion argument, then his challenge to the sufficiency of the evidence, and finally his claim for qualified immunity.[5] Each of Crowder's arguments fails.

### A.    Exhaustion

We first address whether Younger was required to exhaust his administrative remedies before suing. The Prison Litigation Reform Act requires prisoners to exhaust all "available" administrative remedies before filing a § 1983 action challenging the

---

[4] Several other defendants appealed separately. We rejected each of their appeals in unpublished, per curiam decisions. *See Younger v. Dupree*, No. 21-6423, 2022 WL 738610 (4th Cir. March 11, 2022); *Younger v. Ramsey*, 854 Fed. App'x 544 (4th Cir. 2021); *Younger v. Green*, 854 Fed. App'x 544 (4th Cir. 2021). The Supreme Court granted certiorari in Dupree's appeal, *Dupree v. Younger*, 143 S. Ct. 645 (2023), and recently issued an opinion reversing and remanding that case to our court, *Dupree v. Younger*, 143 S. Ct. 1382 (2023). We discuss this opinion in greater depth below, as it is also relevant to this appeal.

[5] We address the sufficiency challenge before qualified immunity because when qualified immunity is asserted post-trial, "the defense must be evaluated in light of the character and quality of the evidence received in court." *Ortiz v. Jordan*, 562 U.S. 180, 184 (2011).

conditions of their confinement.  42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").  Crowder contends that Younger failed to properly exhaust Maryland's administrative remedies, and so his suit is barred.

Before we address the merits of this argument, we must consider whether Crowder preserved it for appeal.[6]  Crowder raised Younger's purported failure to exhaust at summary judgment and on appeal, but not in a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50.  In the past, that failure would have doomed his exhaustion argument, as our precedent in *Varghese v. Honeywell International, Inc.* held that issues resolved at summary judgment and not re-raised in a Rule 50 motion are forfeited on appeal.  424 F.3d 411, 420–23 (4th Cir. 2005).  But the Supreme Court recently abrogated *Varghese*, in a case involving one of Crowder's co-defendants no less.  *Dupree v. Younger*, 143 S. Ct. 1382 (2023).  In *Dupree*, the Court held that "purely legal issues" resolved at summary judgment are preserved for appeal despite a litigant's failure to re-raise the issue in a Rule 50 motion.  *Id.* at 1389.  So we must decide whether the district court's resolution of Crowder's exhaustion argument presents a "purely legal issue."

Though the Supreme Court expressly declined to answer this question in *Dupree*, it did provide us with some guidance.  It explained that a purely legal issue is one that "can

---

[6] Ordinarily, we will not consider issues that have not been preserved.  *See, e.g.*, *Belk, Inc. v. Meyer Corp.*, 679 F.3d 146, 160–61 (4th Cir. 2012).

be resolved without reference to any disputed facts." *Id.*; *see also id.* at 1390 ("[A] purely legal question is, by definition, one whose answer is independent of disputed facts . . . ."). While every case won't be this easy,[7] we can resolve *this* case based solely on the Court's guidance in *Dupree*.

The district court rejected Crowder's exhaustion argument "without reference to any disputed facts." *Dupree*, 143 S. Ct. at 1389. How do we know? It told us. When it denied Crowder's motion for summary judgment, it said: "The Court need not resolve disputes concerning Younger's adherence to the [administrative] process." J.A. 460. The disputes the district court was referring to were factual disputes about whether Younger properly filed grievances and proceeded through every step of Maryland's system for administrative remedies. *Cf. U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 138 S. Ct. 960, 966 (2018) (explaining that factual disputes turn on "questions of who did what, when or where, how or why").

---

[7] The Supreme Court has often noted the difficulty in distinguishing between questions of law and questions of fact. *See Pullman-Standard v. Swint*, 456 U.S. 273, 288 (1982) (noting the "vexing nature of the distinction"); *Miller v. Fenton*, 474 U.S. 104, 113 (1985) ("[T]he appropriate methodology for distinguishing questions of fact from questions of law has been, to say the least, elusive."); *Thompson v. Keohane*, 516 U.S. 99, 111 (1995) (calling the distinction "slippery"); *Williams v. Taylor*, 529 U.S. 362, 385 (2000) ("[O]ur pre-AEDPA efforts to distinguish questions of fact, questions of law, and 'mixed questions' . . . generated some not insubstantial differences of opinion as to which issues fell into which category of question . . . ."). Often, the Court focuses on practical considerations, such as who the proper decision maker is, or the need for judicial review of the question. *See Miller*, 474 U.S. at 113–14; *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1070 (2020). Perhaps because of this, some scholars argue that there is no epistemological difference between questions of law and questions of fact. *See* Ronald J. Allen & Michael S. Pardo, *The Myth of the Law-Fact Distinction*, 97 Nw. L. Rev. 1769 (2003). Thankfully, we need not confront these broader issues to resolve this case.

Instead, the district court denied summary judgment because it held that administrative remedies are unavailable when the Intelligence and Investigative Division is investigating the incident underlying an inmate's grievance. J.A. 460. This holding is a legal conclusion, "independent of disputed facts." *Dupree*, 143 S. Ct. at 1390. After all, neither party disputes that the Division investigated the attack on Younger. Thus, the district court's resolution of Crowder's exhaustion argument presents a purely legal issue under *Dupree*.

Considering an alternate route that the district court could have taken makes this clearer. In response to Crowder's motion for summary judgment, Younger argued, among other things, that administrative remedies were unavailable because prison officials confiscated his documents, failed to respond to grievances he did file, and erroneously told him that he preserved his claims. *See Ross v. Blake*, 578 U.S. 632, 644 (2016). This argument turns on factual disputes—whether Younger's claims are true. *See Vill. at Lakeridge, LLC*, 138 S. Ct. at 966. So rather than denying summary judgment because of its legal conclusion—that an Intelligence and Investigative Division investigation renders administrative remedies unavailable—the district court could have denied summary judgment because factual disputes existed. *See* Fed. R. Civ. P. 56(a) (authorizing a court to grant summary judgment only if there "*is no genuine dispute as to any material fact*" (emphasis added)); *Dupree* 143 S. Ct. at 1390 (describing a "two-track system of summary judgment" where courts sometimes deny a summary judgment motion because "the facts are genuinely in dispute and other times because the law does not support the movant's position"). Had the district court taken this route, the parties would have had to resolve

these factual disputes at trial. And, in that case, the district court's resolution of the exhaustion issue would not have been "purely legal." *Cf. Ortiz*, 562 U.S. at 184–85, 190–92 (explaining that when factual disputes related to qualified immunity are resolved at trial, the defense must be re-asserted in a Rule 50 motion to be preserved for appeal).[8]

In essence, a straightforward reading of *Dupree* and the district court's opinion show that the district court's resolution of Crowder's exhaustion argument presents a purely legal issue. As a result, Crowder was not required to re-raise this issue in a Rule 50 motion to preserve it for appeal.[9]

Turning to the merits, we disagree with Crowder. An inmate need only exhaust administrative remedies that are "available." 42 U.S.C. § 1997e(a); *see also Ross*, 578 U.S. at 635–36. No administrative remedies were available to Younger, so he did not fail to properly exhaust.

Understanding why requires familiarity with Maryland's scheme for administrative remedies in its prisons. Maryland has a three-step process for reviewing inmate grievances.

---

[8] Comparing this alternative resolution to what the district court actually did shows that the district court effectively granted partial summary judgment to Younger. This also shows that the district court's resolution of the exhaustion issue was "purely legal." *Cf. Owatonna Clinic—Mayo Health Sys. v. Med. Prot. Co.*, 639 F.3d 806, 809–11 (8th Cir. 2011).

[9] We pause to note that Crowder *might* not have been able to re-raise exhaustion in a Rule 50 motion given the district court's resolution of the issue. Rule 50 only authorizes a court to grant judgment as a matter of law "[i]f a party has been fully heard on an issue during a jury trial." Fed. R. Civ. P. 50(a)(1). Here, Crowder was not "fully heard" on the exhaustion issue during trial because the district court had held that the ongoing investigation excused an inmate from exhausting administrative remedies.

9

The first two steps of the process are known as the Administrative Remedy Procedure.[10] An inmate initiates the Administrative Remedy Procedure by filing a request for administrative remedy with the warden. Md. Code Regs. §§ 12.02.28.05, 12.02.28.09, 12.02.28.02(A)(14). Assuming the complaint is neither frivolous nor procedurally deficient, the inmate is entitled to a response within 30 days. *See* §§ 12.02.28.10, 12.02.28.12. If the inmate is unsatisfied with the response or the remedy provided, he may appeal to the Commissioner of Corrections. § 12.02.28.05(D)(2). Appeal to the Commissioner ends the Administrative Remedy Procedure. If the Commissioner denies the appeal, the inmate can proceed to the third and final step of the process and appeal to the Inmate Grievance Office. § 12.07.01.05(B).

Crowder's argument is simple. The Prison Litigation Reform Act requires "proper" exhaustion, which "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 83, 90–91 (2006). Younger's grievance was rejected by the Inmate Grievance Office on procedural grounds: The Office dismissed Younger's grievance because he improperly failed to appeal the denial of his request to the Commissioner of Corrections. Thus, Crowder argues, Younger cannot be said to have "properly" exhausted and so his federal claim is barred.

---

[10] The procedure applies to "inmate complaints concerning conditions of confinement," including the "[u]se of force." Md. Code Regs. §§ 12.02.28.02(B)(1), 12.02.28.04(A)(7).

Yet Crowder's argument overlooks a critical word: available. The Act only requires an inmate to exhaust "available" remedies. 42 U.S.C. § 1997e(a). For an administrative remedy to qualify as "available," it must be able to provide some type of relief. *Ross*, 578 U.S. at 642. So even if a remedy is technically on the books, it is not "available" if "it operates as a simple dead end" or if it is "so opaque that it becomes, practically speaking, incapable of use." *Id.* at 643–44. Crowder might be right that Younger did not properly exhaust *all* administrative remedies. But for the claim to be barred, the remedies Younger did not exhaust must also have been available.

They were not. Under Maryland law, an inmate cannot successfully file an administrative grievance over an event that is the subject of an Intelligence and Investigative Division investigation. If they do, that grievance will automatically be dismissed as procedurally deficient. *See* Md. Code Regs. § 12.02.28.11(B). In theory, the inmate could appeal this automatic dismissal to the Commissioner of Corrections. *See* § 12.02.28.11(B)(2)(d). But that would be futile because the regulations demand the dismissal of such an appeal. *See* § 12.02.28.15(C) (directing the Commissioner to summarily dismiss grievances when he agrees with the warden's decision). And an intrepid inmate who appeals his loss before the Commissioner of Corrections to the Inmate Grievance Office while an investigation is pending would suffer the same fate. *See* Md. Corr. Servs. § 10-207 (authorizing the Office to summarily dismiss a grievance that is "wholly lacking in merit on its face"); Md. Code Regs. § 12.07.01.08(C) (requiring an inmate to show the Office that the underlying dismissal is "arbitrary and capricious" or "contrary to law"). So an inmate filing a grievance over an event that is being investigated

11

by the Intelligence and Investigative Division faces nothing but "dead end[s]" that are "practically speaking, incapable of use." *See Ross*, 578 U.S. at 643–44.

It is true that, in some cases, the Office has granted relief to inmates whose grievances were dismissed because of an Intelligence and Investigative Division investigation. Indeed, another inmate who was also attacked by these guards in retaliation for the assault on Officer Ganiyu had his grievance heard by the Office and was awarded $5,000. But to even get to the Office, that inmate had to make two frivolous filings: one to the warden that was procedurally barred and one to the Commissioner asking him to overturn the warden's indisputably correct dismissal. He then had to make a third frivolous filing to the Office, simply hoping it would ignore its own regulations. But there is no explanation for this under Maryland law. Perhaps the Office ignored its regulations as a matter of grace. Regardless, the Prison Litigation Reform Act does not force inmates to walk such a nonsensical and perplexing path to properly exhaust their available administrative remedies. *See Ross*, 578 U.S. at 647. An administrative remedy is unavailable if an inmate's only hope for relief is that officials act contrary to statute and regulation.

Accordingly, when there is an Intelligence and Investigative Division investigation into an officer's use of force, Maryland's scheme for administrative remedies is unavailable. *See id.* When the underlying decision to dismiss a grievance as procedurally barred is rock solid, an inmate need not seek additional review of that decision in the hope that the reviewing bodies will act contrary to law. The Prison Litigation Reform Act does not require that inmates tilt at windmills before they can access federal court. It only

requires exhausting *available* remedies.  Because no remedies were available to Younger, the exhaustion requirement does not bar his suit.

### B.    Sufficiency of the Evidence

Crowder next argues there was insufficient evidence to support the jury's verdict. But his argument runs headlong into the highly deferential standard of review with which we view sufficiency-of-the-evidence challenges.  *See Burgess v. Goldstein*, 997 F.3d 541, 549 (4th Cir. 2021).  Keeping that standard in mind, we must reject Crowder's challenge, as there was sufficient evidence from which a reasonable jury could find that Crowder violated Younger's Fourteenth Amendment rights.

"A court may award judgment as a matter of law only if there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party."  *Saunders v. Branch Banking & Tr. Co.*, 526 F.3d 142, 147 (4th Cir. 2008).  So we must view the evidence in the light most favorable to the non-movant, Younger, drawing "every legitimate inference" in his favor.  *Id.*  And we will uphold the jury's verdict unless "the *only* conclusion a reasonable jury could have reached is one in favor of the moving party."  *Id.* (emphasis added).

The jury sided with Younger, deciding that Crowder was deliberately indifferent to a substantial risk Younger would be harmed in violation of Younger's Fourteenth

13

Amendment rights.[11]   This means they found that Crowder consciously disregarded a serious risk that Younger would be beaten by officers in retaliation for his purported role in the attack on Officer Ganiyu.[12]  *See Slakan v. Porter*, 737 F.2d 368, 373–74, 376 (4th Cir. 1984) (holding that a warden is deliberately indifferent for failing to act despite knowing of serious risk that officers would physically retaliate against inmates by beating them and spraying them with high-pressure fire hoses).  To set aside that verdict, Crowder must show that "no rational trier of fact" could agree with it.  *United States v. Mallory*, 988 F.3d 730, 736 (4th Cir. 2021) ("We can set aside the verdict only if 'no rational trier of fact could have agreed with the jury.'" (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011)).

Deliberate-indifference claims have both an objective and subjective element.  *Moss v. Harwood*, 19 F.4th 614, 624 (4th Cir. 2021).  Younger must first show that he was exposed to an objectively "substantial risk of serious harm."  *See Farmer v. Brennan*, 511

---

[11] Younger was a pretrial detainee at the time of the attack.  The constitutional rights of pretrial detainees are protected by the Fourteenth Amendment, rather than the Eighth Amendment.  *See Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021).  But the precise scope of that protection is unclear.  *See id.*  So we look to Eighth Amendment precedent for guidance, as a pretrial detainee has at least as much protections as a convicted prisoner. *See id.*

[12] The jury held Crowder liable for violating Younger's Fourteenth Amendment rights under a theory of supervisory liability.  While supervisory liability is a well-established concept in our § 1983 jurisprudence, *see, e.g.*, *Wilkins v. Montgomery*, 751 F.3d 214, 226–28 (4th Cir. 2014), the term is a misnomer, *see Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).  As the Supreme Court has explained, "[i]n a § 1983 suit . . . each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.*  So for the jury's verdict to stand, there must be evidence that Crowder himself violated Younger's constitutional rights.  *Cf. id.* at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

14

U.S. 825, 834 (1994). He must then show that Crowder "subjectively recognized" and ignored this risk. *See Moss*, 19 F.4th at 624.

The evidence reflects that Younger's injuries qualify as objectively "serious harm." When Younger was brought to the medical unit at the Center, he had a gash on his head and was "incoherent" from the pain. He received stitches for the head wound, spent several months receiving physical therapy, and ultimately required surgery on his right knee. We've held that similar evidence demonstrates "serious harm" for the objective element of a deliberate indifference claim. *See Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 769–70 (4th Cir. 2003).[13] So Younger's injuries were objectively serious.

And a reasonable jury could conclude there was a "substantial risk" that this "serious harm" would occur. *See Farmer*, 511 U.S. at 834 ("substantial risk of serious harm"). There is ample evidence that guards at the Center often physically retaliated against inmates. Officer Hanna testified that the Center was a "fighting institution" and that he

---

[13] At times we have suggested that showing a serious injury is *necessary* to establish the objective prong of a deliberate-indifference claim. *Danser v. Stansberry*, 772 F.3d 340, 346 & n.8 (4th Cir. 2014). But, in other cases, we have suggested that an "inmate need not show that she in fact suffered serious harm to prevail on this [substantial-risk-of-serious-harm] prong because 'the Eighth Amendment protects against future harm.'" *Thompson v. Virginia*, 878 F.3d 89, 107 (4th Cir. 2017) (quoting *Helling v. McKinney*, 509 U.S. 25, 33–34 (1993)). And, at other times, we have suggested that a serious injury was *sufficient* to establish the objective prong of a deliberate-indifference claim. *See, e.g.*, *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015); *Strickland v. Halsey*, 638 Fed. App'x 179, 184 (4th Cir. 2015). But the Supreme Court in *Farmer* asked whether a "substantial risk of serious harm" existed, not whether "serious harm" itself existed. *Farmer*, 511 U.S. at 834; *cf. Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (stating that the objective prong may be satisfied by a serious injury *or* substantial risk of such harm). As discussed, Younger did suffer serious harm. And, as we will see, there was evidence showing a substantial risk of that harm occurring. So we need not try to reconcile these cases.

had "seen officers go hand to hand with inmates, pop a cell and actually go and fight inmates." He supported this claim with multiple examples. J.A. 1080 (another officer had Officer Hanna watch as he beat an inmate); J.A. 1079 (Officer Hanna broke an inmate's fingers for inappropriately touching another officer); J.A. 1081 (Officer Hanna assaulted an inmate for spitting on him); J.A. 1117–18 (Officer Hanna threw a prisoner into a trash can). And Officer Hanna's testimony was not the only evidence on this point. Other prison officials corroborated his account, often in relation to the very officers who beat Younger. *See, e.g.*, J.A. 648–49 (detailing two instances when Officer Green assaulted inmates); J.A. 866–67 (explaining that Officers Green and Ramsey engaged in a "pattern of assaults" in the months before the attack on Younger); J.A. 787 (Officer Ramsey accused of kicking inmate in face); J.A. 785 (an officer pepper sprayed an inmate who was locked in a cell).

A reasonable jury could thus conclude that Younger faced a substantial risk that he would be seriously harmed by officers after Officer Ganiyu identified Younger as one of his assailants. Indeed, we held in *Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984), that similar evidence established a substantial risk of harm. In *Slakan*, an inmate sued a warden and other prison officials after he was beaten and sprayed with a firehose in retaliation for slapping a guard on the shoulder. *Id.* at 371. The inmate put forth testimony of a guard that the practice of spraying inmates with firehoses "was widespread among the guards and seldom questioned by supervisors." *Id.* at 374. Other evidence corroborated the guard's testimony. *Id.* at 373–74. We concluded that this was sufficient evidence to establish a substantial risk of harm. *See id.* So, just as in *Slakan*, the objective element of Younger's deliberate indifference claim is satisfied here.

16

But a substantial risk of serious harm, standing alone, isn't enough to prevail. The record also must establish that Crowder had actual knowledge of this risk and that Crowder acted inappropriately despite that knowledge. *See Koon v. North Carolina*, 50 F.4th 398, 406 (4th Cir. 2022). This knowledge can be established by circumstantial evidence, *id.* at 407, such as when the risk of an attack was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past" and "the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk." *Farmer*, 511 U.S. at 842–43. In such a case, a reasonable jury could infer that the defendant-official had actual knowledge because he "must have known" about risk of attack. *See id*.

Viewing the evidence in the light most favorable to Younger, a reasonable jury could conclude that Crowder "must have known" it was likely that Younger would be attacked. *See id.* The risk of officer assaults on inmates was "expressly noted by prison officials in the past" and brought to Crowder's attention. *See id.* Several individuals testified at trial that they warned Crowder about the specific officers who assaulted Younger. J.A. 687–88, 690 (Assistant Warden Fisher warned Crowder that Officers Green and Ramsey were appearing in use of force reports concerningly often); J.A. 781–83 (Captain Pere told Crowder that Officers Green and Ramsey needed additional use of force training); J.A. 526 (former warden Hinton warned Crowder that Officer Green was "trouble"). And Crowder reviewed all the use of force reports, over 90% of which involved Officers Green and Ramsey in the year predating the attack on Younger. As Younger's expert, Donald Leach, testified, this was an "early warning sign[]" for Crowder. *See* J.A.

17

1138. In light of this evidence, a reasonable jury could conclude that Crowder had actual knowledge of the risk that Younger would be assaulted in retaliation for his role in the attack on Officer Ganiyu.[14]  *See Farmer*, 511 U.S. at 842–43.

A reasonable jury could have also concluded that Crowder was deliberately indifferent to this risk.  Good-faith efforts to address a known risk can prevent a finding of deliberate indifference.  *Koon*, 50 F.4th at 407.  But Crowder made no effort at all to prevent the attack on Younger.[15]  He did not transfer the inmates involved in the assault on Officer Ganiyu, despite an unwritten policy authorizing transfers in such situations.  He

---

[14] There was also one piece of direct evidence establishing Crowder's knowledge. Officer Hanna testified that at the roll call for night shift following the attack on Officer Ganiyu, Crowder asked the assembled officers "why do my inmates look like this and my officer looks like that." J.A. 1107–08. Other evidence, however, overwhelmingly suggests that Crowder was not present for the night shift roll call. Younger does not rely on this evidence, and so neither do we, but we pause to note that this evidence raises an interesting question about the standard of review: Does "viewing the evidence in the light most favorable to" Younger require us to accept as true admissible hearsay testimony contradicted by documentary evidence and other testimony?

The common refrain when reviewing a Rule 50 motion is that we must "view all the evidence in the light most favorable to the prevailing party and draw all reasonable inferences in his or her favor." *Konkel v. Bob Evans Farms Inc.*, 165 F.3d 275, 279 (1999). But we also must be careful not to weigh the evidence or make credibility determinations. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000). So what are we to do here? Since resolving this quandary is unnecessary to decide this case, we leave it for another day.

[15] Crowder testified that after learning of the attack on officer Ganiyu, he called his supervisor and she did not instruct him to take any action. But she testified that she did not recall this conversation. Because we view the evidence in the light most favorable to Younger, we must disregard Crowder's testimony and assume the conversation did not occur. *See Reeves*, 533 U.S. at 151 (directing courts to "disregard all evidence favorable to the moving party that the jury is not required to believe" when reviewing a Rule 50(b) motion). So Crowder cannot use this purported phone call to avoid a finding of deliberate indifference.

failed to make clear to his subordinates that retaliation would not be tolerated, or to order that the inmates were not to be touched. *See Slakan*, 737 F.2d at 376 (highlighting "the need to provide clear guidance to frontline personnel on the permissible uses of force against defenseless inmates"); J.A. 1160 (testimony from Leach that a warden must make clear to line staff that "retaliation on any level was not going to be tolerated"). The bottom line is that the record, when viewed most favorably to Younger, establishes that Crowder did not try to mitigate the known risk to Younger's safety.

To recap, when the evidence is viewed most favorably to Younger, it establishes that there was a substantial risk that officers would beat Younger in retaliation for his role in the attack on Officer Ganiyu. The evidence also establishes that Crowder must have known about this risk, and—despite that knowledge—did nothing to prevent the retaliatory attack from occurring. That is deliberate indifference, and so there was a legally sufficient basis to support the jury's verdict.[16] *See Saunders*, 526 F.3d at 147; *Farmer*, 511 U.S. at 847.

---

[16] In past cases, we have sometimes used a three-factor test to establish supervisory liability. *See, e.g.*, *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994); *Wilkins*, 751 F.3d at 226. That test asks (1) whether "the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury"; (2) whether "the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) whether "there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw*, 13 F.3d at 799 (internal quotation marks omitted).

Rather than walk through this three-factor gloss here, we ask the simpler question—and the one more in line with the Supreme Court's statement that supervisors can only be

(Continued)

## C.    Qualified Immunity

Crowder's final argument is that even if he was deliberately indifferent, he is still entitled to qualified immunity.  We reject this argument, as it was clearly established in 2013 that a warden with Crowder's knowledge, who did what Crowder did—i.e., nothing—is deliberately indifferent in violation of the Fourteenth Amendment.[17]

Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  "To overcome qualified immunity, a plaintiff must show '(1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'"  *Cannon v. Vill. of Bald Head Island*, 891 F.3d 489, 497 (4th Cir. 2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731,

---

liable for their own misconduct in § 1983 suits, *see Iqbal*, 556 U.S. at 677— of whether Crowder himself was deliberately indifferent.  We need not, and do not, decide whether or how much of the three-factor test from *Shaw* conflicts with *Iqbal* because, for all the reasons discussed, there is sufficient evidence to uphold the jury's verdict under *Shaw*'s test.

[17] We have effectively done away with the clearly established prong of qualified immunity for a subset of deliberate indifference cases.  *See Pfaller v. Amonte*, 55 F.4th 436, 445–48 (4th Cir. 2022) (discussing *Thorpe v. Clarke*, 37 F.4th 926 (4th Cir. 2022)). In such cases, we look only to see whether there was a constitutional violation.  *Id.* at 448. Because Crowder is not entitled to qualified immunity under the "normal" two-prong approach, we need not decide whether his case falls within this subset.

735 (2011)).      A right is clearly established if existing precedent has placed the constitutional question beyond debate.[18]  *Mays*, 992 F.3d at 301.

Here, the qualified immunity question turns on the clearly established prong.  The jury concluded that Crowder violated Younger's constitutional rights.  And as explained in the prior section, the evidence is sufficient to sustain the jury's verdict.  So the only question remaining is whether Crowder violated clearly established law.

The Supreme Court has repeatedly stated that courts should not examine clearly established law at too high a level of generality.[19]  And while it's true we require less specificity in Eighth Amendment context, even there we must define the right "in light of the specific context of the case, not as a broad general proposition."  *Cox v. Quinn*, 828 F.3d 227, 238 (4th Cir. 2016) (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 301 (4th Cir. 2004)).  Deliberate indifference is a multifaceted claim requiring significant risk, substantial harm, knowledge, and inaction.  So we define each facet of Younger's deliberate-indifference claim in the "specific context" of this case when searching for clearly established law.  *Id.*; *see also Mullenix*, 577 U.S. at 12 ("The dispositive question

---

[18] When determining whether a right is clearly established, we look to cases from the Supreme Court, this Court of Appeals, and the highest court of the state in which the action arose. *Thompson*, 878 F.3d at 98.

[19] *See, e.g.*, *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) ("This Court has repeatedly told courts not to define clearly established law at a high level of generality." (cleaned up)); *White v. Pauly*, 137 S. Ct. 548, 552 (2017) ("Today, it is again necessary to reiterate the longstanding principle that clearly established law should not be defined at a high level of generality." (internal quotation marks omitted)); *Mullenix*, 577 U.S. at 12 ("We have repeatedly told courts not to define clearly established law at a high level of generality." (cleaned up)).

is whether the violative nature of *particular* conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." (cleaned up)).[20] Doing so frames the qualified immunity question as follows: Was it clearly established in 2013 that a warden violates an inmate's Fourteenth Amendment rights when he knows—based on officers' past behavior and warnings about officers' excessive use of force—that his officers are likely to attack and seriously injure the inmate in retaliation for the inmate's behavior, but does nothing to address that risk?

It was. We held in 1984 that a warden was not entitled to qualified immunity when he was deliberately indifferent to his officers retaliating against inmates by beating them and spraying them with high-pressure fire hoses. *Slakan*, 737 F.2d at 373 n.1, 376. In *Slakan*, the warden knew that such prisoner abuse was likely because the practice was widespread and had been brought to the warden's attention. *Id.* at 373–75. But he failed to act, and an inmate was sprayed with a firehose, tear gassed, and beaten into unconsciousness. *Id.* at 371, 376. We denied the warden qualified immunity because "explicit legal guideposts" showed his actions amounted to unconstitutional deliberate indifference. *Id.* at 376. In other words, by 1984, it was clearly established that a warden

---

[20] The district court failed to heed this requirement. It defined the right at issue as a prisoner's "right to be protected from malicious attack . . . from the very officials tasked with ensuring their security." J.A. 471 (quoting *Thompson*, 878 F.3d at 109). Not only does this define the right far too generally, but it also impermissibly defines the right based on case decided after the attack on Younger. *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) ("To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent."). Despite this dual error, we affirm the district court's denial of qualified immunity because, properly defining the right, Crowder violated clearly established law.

violates the Constitution if past practice warns him that his officers are likely to retaliate against and seriously injure an inmate and he does nothing about it. What was true in 1984 was true in 2013. *Slakan* shows that it was clearly established in 2013 that Crowder's inaction amounted to unconstitutional deliberate indifference.

Crowder seeks to avoid this conclusion by recasting the issue as a right to receive a transfer. Crowder argues that Younger is claiming a constitutional right to be transferred to another facility after participating in an attack on a corrections officer. He points to our caselaw to argue that there is no clearly established right to a transfer, and so claims that he must be afforded qualified immunity. *See Adams v. Ferguson*, 884 F.3d 219 (4th Cir. 2018).

Yet Crowder misses the forest for the trees. Younger is not alleging that he had a right to be transferred to another facility; rather, he is claiming a right to be free from prison officials who know he is at high risk of being assaulted by subordinates and who take no action to prevent it. While transferring Younger might have been enough to prevent Younger's assault, it is not the only protective action Crowder could have taken. He could have, for example, issued an order that the inmates involved in the assault on Officer Ganiyu were not to be touched. *See* J.A. 1160 (testimony from Younger's expert on the need to make sure officers know that retaliation will not be tolerated). Or he could have moved Officers Green and Ramsey to positions with little or no inmate contact. *See* J.A. 523 (testimony from Hinton explaining that during her tenure as warden she transferred

23

Green to a position with less inmate contact).[21]  By focusing solely on the right to a transfer, Crowder mischaracterizes Younger's allegation and so misses the point:  He did not have to order a transfer, but he did have to do *something*.  He did nothing.  And so he is not entitled to qualified immunity.

*          *          *

This case was properly tried before a jury because inmates cannot receive any relief through Maryland's administrative grievance proceedings when the Intelligence and Investigative Division is investigating the subject matter of the grievance.  And the jury's role in trials is enshrined in the Seventh Amendment for good reason.  Resolving factual disputes, weighing the evidence, and determining whom to believe is within its province. When a jury performs these functions, we will not disturb its conclusions based on a cold record unless those conclusions lack evidentiary support.  Here, the evidence was sufficient to support the jury's conclusions.  And based on how the jury resolved these issues, Crowder's conduct violated clearly established law.  So the district court's order is

AFFIRMED.

---

[21] We need not decide whether these actions would have been enough to satisfy Crowder's obligation.  They are simply examples that were highlighted at trial.